## DAIMLERCHRYSLER CORPORATION *v.* PAMELA LAW, COMMISSIONER OF REVENUE SERVICES
### (SC 17892)

Rogers, C. J., and Norcott, Katz, Vertefeuille and Schaller, Js.

---

Argued October 15—officially released December 18, 2007

*Scott M. Erskine,* pro hac vice, with whom was *Catherine A. Stewart,* for the appellant (plaintiff).

*Gregory T. D'Auria,* associate attorney general, with whom were *Louis P. Bucari, Jr.,* and, on the brief, *Richard Blumenthal,* attorney general, and *Paul M. Scimonelli,* assistant attorney general, for the appellee (defendant).

*Opinion*

KATZ, J. The plaintiff, DaimlerChrysler Corporation, appeals from the judgment of the trial court dismissing the plaintiff's appeal from the decision of the defendant, Pamela Law, the commissioner of revenue services, denying the plaintiff's claim for a refund of state sales tax it had paid to consumers pursuant to General Stat-

utes § 42-179 (d),[1] a part of what is commonly known as the state's lemon law. See General Statutes §§ 42-179 through 42-190. Specifically, the plaintiff claims that the trial court improperly determined that its claims were barred by sovereign immunity because it was not an aggrieved taxpayer authorized to appeal from the defendant's decision pursuant to General Statutes § 12-422,[2] and that the state has not waived its sovereign

[1] General Statutes § 42-179 (d) provides in relevant part: "If the manufacturer or its agents or authorized dealers are unable to conform the motor vehicle to any applicable express warranty by repairing or correcting any defect or condition which substantially impairs the use, safety or value of the motor vehicle to the consumer after a reasonable number of attempts, the manufacturer shall replace the motor vehicle with a new motor vehicle acceptable to the consumer, or accept return of the vehicle from the consumer and refund to the consumer, lessor and lienholder, if any, as their interests may appear, the following: (1) The full contract price, including but not limited to, charges for undercoating, dealer preparation and transportation and installed options, (2) all collateral charges, including but not limited to, sales tax, license and registration fees, and similar government charges, (3) all finance charges incurred by the consumer after he first reports the nonconformity to the manufacturer, agent or dealer and during any subsequent period when the vehicle is out of service by reason of repair, and (4) all incidental damages as defined in section 42a-2-715, less a reasonable allowance for the consumer's use of the vehicle. No authorized dealer shall be held liable by the manufacturer for any refunds or vehicle replacements in the absence of evidence indicating that dealership repairs have been carried out in a manner inconsistent with the manufacturers' instructions. Refunds or replacements shall be made to the consumer, lessor and lienholder if any, as their interests may appear. . . ."

[2] General Statutes § 12-422 provides in relevant part: "Any taxpayer aggrieved because of any order, decision, determination or disallowance of the Commissioner of Revenue Services under section 12-418, 12-421 or 12-425 may, within one month after service upon the taxpayer of notice of such order, decision, determination or disallowance, take an appeal therefrom to the superior court for the judicial district of New Britain, which shall be accompanied by a citation to the Commissioner of Revenue Services to appear before said court. . . . Said court may grant such relief as may be equitable and, if such tax has been paid prior to the granting of such relief, may order the Treasurer to pay the amount of such relief, with interest at the rate of two-thirds of one per cent per month or fraction thereof, to the aggrieved taxpayer. . . ." See footnote 3 of this opinion for the relevant text of General Statutes § 12-425; see footnote 7 of this opinion for the relevant text of General Statutes §§ 12-418 and 12-421.

immunity under § 42-179 (d) because that provision does not compel the defendant to reimburse manufacturers for refunds of sales tax made to consumers. The plaintiff further claims that the defense of sovereign immunity could not be interposed in a claim against the state for unconstitutional acts. We disagree with the plaintiff, and, accordingly, we affirm the judgment of the trial court.

The record reveals the following undisputed relevant facts and procedural history. During the period relevant to this appeal, the plaintiff was engaged in the business of manufacturing motor vehicles for sale and lease to consumers in Connecticut. More significantly for the purposes of this appeal, the plaintiff refunded state sales tax to certain consumers when it accepted for return their motor vehicles pursuant to § 42-179 (d), which provides that a consumer may return a materially defective new motor vehicle that cannot be repaired to the manufacturer, which must then refund to the consumer the vehicle's contract price plus all collateral charges, including the sales tax previously paid by the consumer. Thereafter, on October 27, 2004, pursuant to General Statutes § 12-425,[3] the plaintiff timely filed

---

[3] General Statutes § 12-425 provides in relevant part: "(1) Claim limitation period. No refund shall be allowed unless a claim therefor is filed with the commissioner within three years from the last day of the month succeeding the period for which the overpayment was made, or, with respect to assessments made under sections 12-415 and 12-416, within six months after the assessments become final. No credit shall be allowed after the expiration of the period specified for filing claims for refund unless a claim for credit is filed with the commissioner within such period, or unless the credit relates to a period for which a waiver is given pursuant to subsection (g) of section 12-415.

"(2) Conditions; sales tax reimbursement. No credit or refund of any amount paid pursuant to section 12-411 shall be allowed on the ground that the storage, acceptance, consumption or other use of the services or property is exempted under subdivision (1) of section 12-413, unless in addition to the overpayment for which the claim is filed the claimant also has reimbursed the claimant's vendor for the amount of the sales tax imposed upon the claimant's vendor with respect to the sale of the property and paid by the vendor to the state. . . .

a claim with the defendant for a refund of sales and use taxes arising from the various refunds it had given to lemon law consumers. On or about February 22, 2005, the defendant issued notice to the plaintiff disallowing the tax refund. The plaintiff timely filed a written protest; however, on August 26, 2005, the defendant issued a final determination that the plaintiff was not entitled to relief pursuant to §§ 42-179 and 12-425. Specifically, the defendant concluded therein that "the vehicle sales in question were completed transactions properly subjected to sales tax in this state. Without statutory provisions allowing a refund of said tax, the [d]epartment [of revenue services] is without authority to approve this refund claim."

"(5) Determination of validity. Notice of action. (A) The commissioner, upon receipt of such claim for refund, shall determine whether such claim is valid and, if so, shall notify the State Comptroller of the amount of such refund and the State Comptroller shall draw an order on the State Treasurer for payment of such refund. If the commissioner determines that such claim is not valid, either in whole or in part, he shall mail notice of the proposed disallowance to the claimant in the manner prescribed for service of notice of a deficiency assessment. Sixty days after the date on which it is mailed, a notice of proposed disallowance shall constitute a final disallowance except only for such amounts as to which the claimant has filed, as provided in subparagraph (B) of this subdivision, a written protest with the commissioner.

"(B) On or before the sixtieth day after the mailing of the proposed disallowance, the claimant may file with the commissioner a written protest against the proposed disallowance in which the claimant sets forth the grounds on which the protest is based. If a protest is filed, the commissioner shall reconsider the proposed disallowance and, if the claimant has so requested, may grant or deny the claimant or the claimant's authorized representatives an oral hearing.

"(C) The commissioner shall mail notice of his determination to the claimant, which notice shall set forth briefly the commissioner's findings of fact and the basis of decision in each case decided in whole or in part adversely to the claimant.

"(D) The action of the commissioner on the claimant's protest shall be final upon the expiration of one month from the date on which he mails notice of his action to the claimant unless within such period the claimant seeks judicial review of the commissioner's determination pursuant to section 12-422."

The plaintiff subsequently appealed, pursuant to § 12-422, from the defendant's decision to the trial court. The plaintiff asserted that, although it was not the retailer of the motor vehicles for which it sought a tax refund and, accordingly, was not legally obligated to, and therefore did not, charge, collect and remit sales tax to the defendant in connection with the sales of any of these motor vehicles, it nevertheless was a taxpayer entitled to reimbursement because it had refunded the sales tax pursuant to § 42-179 (d). According to the plaintiff, the defendant's failure to reimburse it for the refunds it had paid pursuant to § 42-179 (d) has resulted in, inter alia: a violation of the plaintiff's rights to due process and equal protection under the state and federal constitutions; an unconstitutional taking under the state constitution; and unjust enrichment. The plaintiff also alleged that it was entitled to the refund on various equitable grounds, including equitable subrogation.

The defendant moved to dismiss the appeal for lack of subject matter jurisdiction on several grounds. First, the defendant contended that the appeal was barred by the doctrine of sovereign immunity because the plaintiff was not "[a] taxpayer aggrieved because of any order, decision, determination or disallowance of the [defendant]"; General Statutes § 12-422; and therefore could not pursue an appeal under § 12-422, the statutory provision waiving sovereign immunity for such appeals. Rather, the plaintiff's obligation to reimburse consumers arose from the lemon law, specifically, § 42-179 (d), which discloses no legislative authorization for a manufacturer to recover any of the contract price or collateral charges, such as sales tax, that had been refunded to the consumer. Therefore, according to the defendant, § 42-179 (d) does not authorize the plaintiff's appeal expressly or implicitly. Second, the defendant contended that, even if § 42-179 (d) did authorize the appeal, the plaintiff was neither statutorily aggrieved

because it did not fall within the zone of interests protected by the statute, nor classically aggrieved because it did not have a specific personal and legal interest in the subject matter.[4] Finally, the defendant contended that, to the extent that the plaintiff had alleged that it was equitably subrogated to the rights of the consumer under the lemon law, the plaintiff had no standing to seek a refund on the basis of that doctrine because the Connecticut Sales and Use Taxes Act, General Statutes § 12-406 et seq., does not expressly authorize subrogation.

The plaintiff opposed each of the grounds asserted in the defendant's motion to dismiss. Specifically, with respect to the issue of sovereign immunity, the plaintiff asserted that it is an aggrieved taxpayer entitled to file for a refund pursuant to §§ 12-422 and 12-425. The plaintiff contended that, if the trial court were to construe §§ 12-422 and 12-425 otherwise, and thereby deprive the plaintiff of the right to a refund of the sales tax that the defendant statutorily was required to make under § 42-179 (d), then an unconstitutional deprivation of property would occur. The plaintiff further contended that sovereign immunity properly cannot be interposed as an affirmative defense when, as in this case, the claim is that, inter alia, an unconstitutional deprivation of property without due process and a violation of its right to equal protection will result if the

---

[4] The defendant contended that the plaintiff did not fall within the zone of interests of the lemon law necessary for statutory aggrievement because that law "is a remedial statute that protects purchasers of new passenger motor vehicles." *Cagiva North America, Inc.* v. *Schenk*, 239 Conn. 1, 6, 680 A.2d 964 (1996). With respect to classical aggrievement, the defendant contended that, because the subject matter in the appeal was the original transaction and the plaintiff was neither the retailer of the motor vehicle nor otherwise a party thereto, it did not have the requisite "specific personal and legal interest in the subject matter . . . ." (Internal quotation marks omitted.) *Edgewood Village, Inc.* v. *Housing Authority*, 265 Conn. 280, 288, 828 A.2d 52 (2003), cert. denied, 540 U.S. 1180, 124 S. Ct. 1416, 158 L. Ed. 2d 82 (2004).

refund is denied. Finally, the plaintiff contended that the facts alleged in its complaint, specifically, that it had refunded the sales tax pursuant to the statutory mandate of § 42-179 (d), were sufficient to establish standing under both statutory and classical aggrievement.

In granting the defendant's motion to dismiss, the trial court determined that, although the plaintiff had asserted several theories of recovery, the dispositive issue was whether the defendant was immune from suit because of the doctrine of sovereign immunity. The trial court agreed with the defendant's contention that the plaintiff was not a taxpayer within the meaning of § 12-422, a sales and use taxes statute, but, rather, that it was a claimant seeking reimbursement from § 42-179 (d), the lemon law, which does not authorize expressly or implicitly the plaintiff's claim for reimbursement. Additionally, the trial court rejected the plaintiff's contention that sovereign immunity could not be interposed as a defense when a claim is brought against the government for unconstitutional acts, noting that "[t]o overcome sovereign immunity, the [plaintiff was] required to clearly demonstrate an incursion upon constitutionally protected interests." (Internal quotation marks omitted.) *Tuchman* v. *State*, 89 Conn. App. 745, 755, 878 A.2d 384, cert. denied, 275 Conn. 920, 883 A.2d 1252 (2005). The court concluded that the plaintiff had failed to meet this burden because its claims were "founded on the [defendant's] refusal to refund state sales taxes to the plaintiff as provided for in §§ 12-422 and 12-425," and the plaintiff was not a taxpayer entitled to claim a refund under any of those sections of the sales and use taxes statutes. Accordingly, the trial court granted the defendant's motion to dismiss on the basis of sovereign

immunity without reaching the issue of aggrievement. This appeal followed.[5]

The plaintiff contends that the trial court improperly determined that sovereign immunity was a bar to its appeal. Specifically, the plaintiff contends that the trial court acted improperly when it rejected its claims that the state authorized the present action against the defendant by the plaintiff as an aggrieved taxpayer pursuant to §§ 12-422 and 12-425, and that the doctrine of sovereign immunity does not bar the court's ability to consider the plaintiff's claims regarding the various constitutional ramifications of the refund denials. The plaintiff also contends that, on the basis of the allegations, the trial court should have concluded that it was classically and statutorily aggrieved. In response, the defendant reiterates her contention that the plaintiff was not a taxpayer, and therefore could not prevail, under § 12-422, the statutory provision waiving sovereign immunity. Rather, because the plaintiff's obligation to reimburse consumers arose from § 42-179 (d), which does not authorize an appeal, the state did not waive sovereign immunity. Furthermore, the defendant maintains that the trial court properly determined that it was without jurisdiction to consider the plaintiff's claims for the alleged unconstitutional results ensuing from the refund denial. Finally, the defendant repeats her earlier assertions that the plaintiff did not establish the requisite aggrievement to have standing to bring this appeal. See footnote 4 of this opinion. We agree with the defendant that the trial court properly determined that sovereign immunity was a bar to the plaintiff's appeal. Therefore, the trial court lacked subject matter jurisdiction over the plaintiff's appeal, and, accordingly, we

_____

[5] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

do not reach the other jurisdictional issues raised by the parties.

## I

As a preliminary matter, we set forth the applicable standard of review. "The standard of review of a motion to dismiss is . . . well established. In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." (Internal quotation marks omitted.) *Brookridge District Assn.* v. *Planning & Zoning Commission*, 259 Conn. 607, 610–11, 793 A.2d 215 (2002).

"Sovereign immunity relates to a court's subject matter jurisdiction over a case, and therefore presents a question of law over which we exercise de novo review. . . . In so doing, we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record. . . . The principle that the state cannot be sued without its consent, or sovereign immunity, is well established under our case law. . . . It has deep roots in this state and our legal system in general, finding its origin in ancient common law. . . . Not only have we recognized the state's immunity as an entity, but [w]e have also recognized that because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state. . . . Exceptions to this doctrine are few and narrowly construed under our jurisprudence. . . .

"[A] litigant that seeks to overcome the presumption of sovereign immunity must show that (1) the legisla-

ture, either expressly or by force of a necessary implication, statutorily waived the state's sovereign immunity . . . or (2) in an action for declaratory or injunctive relief, the state officer or officers against whom such relief is sought acted in excess of statutory authority, or pursuant to an unconstitutional statute. . . . In making this determination, this court has recognized the well established principle that statutes in derogation of sovereign immunity should be strictly construed. . . . Where there is any doubt about their meaning or intent they are given the effect which makes the least rather than the most change in sovereign immunity." (Citations omitted; internal quotation marks omitted.) *C. R. Klewin, LLC* v. *Fleming*, 284 Conn. 250, 257–59, 932 A.2d 1053 (2007). Because the plaintiff does not claim that its statutory claims fall within the exception to sovereign immunity,[6] the central issue before the court is whether there was a statutory waiver of sovereign immunity.

Whether the legislature has waived the state's sovereign immunity protection raises a question of statutory interpretation. General Statutes § 1-2z provides that "[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." When the meaning of a statute is not plain and unambiguous, however, "we look to the words of the statute itself, to the legislative history and circum-

---

[6] For the reasons set forth in part II of this opinion, we also note that we construe the plaintiff's request for relief—an order that the defendant refund all sales taxes for which the plaintiff had submitted a claim for refund—as a claim for damages. Therefore, the plaintiff must establish a waiver of sovereign immunity.

stances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *First Union National Bank* v. *Hi Ho Mall Shopping Ventures, Inc.*, 273 Conn. 287, 292, 869 A.2d 1193 (2005). There are two statutes that are central to this appeal, and we address each in turn.

## A

We begin with § 12-422, which provides in relevant part: "Any taxpayer aggrieved because of any order, decision, determination or disallowance of the Commissioner of Revenue Services under section 12-418, 12-421 or 12-425 may, within one month after service upon the taxpayer of notice of such order, decision, determination or disallowance, take an appeal therefrom to the superior court . . . . Said court may grant such relief as may be equitable and, if such tax has been paid prior to the granting of such relief, may order the Treasurer to pay the amount of such relief, with interest . . . to the aggrieved taxpayer. . . ."[7] The plaintiff contends

---

[7] General Statutes § 12-418 (1) provides: "Petition for reassessment. (A) Any person against whom an assessment is made under section 12-414a, 12-415, 12-416 or 12-424 or any person directly interested may petition for a reassessment not later than sixty days after service upon such person of notice thereof. If a petition for reassessment is not filed within the sixty-day period, the assessment becomes final at the expiration of the period.

"(B) Any person against whom an assessment is made under section 12-417 or any person directly interested may petition for a reassessment not later than ten days after service of notice upon such person. If a petition for reassessment is not filed within such ten-day period, the assessment becomes final at the expiration of the period."

General Statutes § 12-421 provides: "Any taxpayer, having paid any tax as provided by this chapter, aggrieved by the action of the commissioner or his authorized agent in fixing the amount of such tax or in imposing any penalty hereunder, may apply to the commissioner, in writing, within sixty days after the notice of such action is delivered or mailed to him, for a hearing and a correction of the amount of the tax or penalty so fixed, setting forth the reasons why such hearing should be granted and the amount in which such tax should be reduced. The commissioner shall promptly consider each such application and may grant or deny the hearing requested.

that this provision expressly waives sovereign immunity for those aggrieved taxpayers who fall within its limitations. It is readily apparent, and the plaintiff does not claim otherwise, that it does not fall within either those persons afforded relief under § 12-418; see General Statutes § 12-418 (1) (A) ("[a]ny person against whom an assessment is made under section 12-414a, 12-415, 12-416 or 12-424"); General Statutes § 12-418 (1) (B) ("[a]ny person against whom an assessment is made under section 12-417"); or those persons afforded relief under § 12-421 ("[a]ny taxpayer, having paid any tax as provided by this chapter, aggrieved by the action of the commissioner or his authorized agent in fixing the amount of such tax or in imposing any penalty hereunder"). The plaintiff does claim, however, that § 12-425 authorizes its administrative claim for a refund, thereby placing it squarely within § 12-422, because, according to the plaintiff, § 12-425 "contains no limitations or restrictions on who may be a claimant thereunder." The plaintiff claims, in essence, that §§ 12-422 and 12-425, read in tandem, act as a waiver of sovereign immunity.

The defendant responds that the plaintiff's reliance on these provisions is misplaced, because these provisions merely set forth the two step process that must be followed in order to file an appeal to the Superior Court under the Sales and Use Taxes Act, § 12-406 et

If the hearing is denied, the applicant shall be notified thereof forthwith; if it is granted, the commissioner shall notify the applicant of the time and place fixed for such hearing. After such hearing the commissioner may make such order in the premises as appears to him just and lawful and shall furnish a copy of such order to the applicant. The commissioner may, by notice in writing at any time within three years after the date when any return of any taxpayer has been due, order a hearing on his own initiative and require the taxpayer or any other individual whom he believes to be in possession of relevant information concerning the taxpayer to appear before him or his authorized agent with any specified books of account, papers or other documents, for examination under oath."

See footnote 3 of this opinion for the relevant text of § 12-425, the provision addressing overpayments and refunds, which is at issue in this appeal.

seq. We agree with the defendant that § 12-425 does not itself either expressly or by necessary implication waive the state's sovereign immunity. Cf. *Federal Deposit Ins. Corp.* v. *Crystal*, 251 Conn. 748, 760, 741 A.2d 956 (1999) (noting that General Statutes § 12-225 "establishes an administrative request for a refund [of corporate business taxes] as the prescribed avenue of relief that the [plaintiff] was required to follow *in order to take advantage of the state's limited waiver of its sovereign immunity* [*under General Statutes § 12-237*]" [emphasis added; internal quotation marks omitted]). We disagree, however, that § 12-422 does not statutorily waive sovereign immunity for those persons that fall within the ambit of that section. See *American Totalisator Co.* v. *Dubno*, 210 Conn. 401, 411–12, 555 A.2d 414 (1989) (Section 12-422 "authorize[s] the Superior Court to set aside an assessment of interest. . . . The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court." [Citations omitted; internal quotation marks omitted.]); *Robert Emmet & Son Oil & Supply Co.* v. *Sullivan*, 158 Conn. 234, 243, 259 A.2d 636 (1969) ("the court in the exercise of this express authorization may properly enter an order for a refund . . . with interest as provided by [§ 12-422]").

The issue, therefore, is whether the plaintiff falls within the provisions of § 12-422 as a "taxpayer aggrieved because of any order, decision, determination or disallowance of the Commissioner of Revenue Services under section . . . 12-425," because, as this court repeatedly has underscored, "[t]he scope of any statutory waiver must be confined strictly to the extent the statute provides." (Internal quotation marks omitted.) *First Union National Bank* v. *Hi Ho Mall Shopping Ventures, Inc.*, supra, 273 Conn. 294; accord *Mahoney* v. *Lensink*, 213 Conn. 548, 55–56, 569 A.2d 518 (1990) ("because such statutes are in derogation of the com-

mon law, [a]ny statutory waiver of immunity must be narrowly construed . . . and its scope must be confined strictly to the extent the statute provides" [citation omitted; internal quotation marks omitted]). We conduct this inquiry mindful that § 12-425 mandates that the defendant refund certain taxes; *Chatterjee* v. *Commissioner of Revenue Services*, 277 Conn. 681, 692–93, 894 A.2d 919 (2006); thereby imposing a monetary obligation on the sovereign, and thus it is essential for its requirements to be satisfied.

The plaintiff cannot meet the requirements of § 12-425 for several reasons. First, the plaintiff cannot establish eligibility for the tax refund because it neither qualifies as a "taxpayer" as that term is contemplated in the Sales and Use Taxes Act; see *Plasticrete Block & Supply Corp.* v. *Commissioner of Revenue Services*, 216 Conn. 17, 21, 579 A.2d 20 (1990) ("[a] tax is imposed upon a taxpayer for the sale of goods or services at retail"); nor does it qualify as a "taxpayer" as that term commonly is understood. See *Bell Atlantic NYNEX Mobile, Inc.* v. *Commissioner of Revenue Services*, 273 Conn. 240, 256 n.16, 869 A.2d 611 (2005), quoting Merriam-Webster's Collegiate Dictionary (10th Ed. 1993) (defining taxpayer as " 'one that pays or is liable for a tax' "); see also *Chatterjee* v. *Commissioner of Revenue Services*, supra, 277 Conn. 690 (relying on mandate under General Statutes § 1-1 [a] to construe statutory terms "according to their common usage" and looking to dictionary definition of term "suit" in tax statute, General Statutes § 12-39s [internal quotation marks omitted]). Additionally, the plaintiff invokes the mandatory refund provision of § 12-425 independent of the statutory prerequisites for its application, which clearly focus on the original sale and purchaser; see, e.g., General Statutes § 12-407 (a) (3) (B) ("[i]f the original purchaser has paid sales or use tax on the original sale of such property to the original purchaser, such original pur-

chaser may (i) claim a refund of such tax under the provisions of section 12-425, upon presentation of proof satisfactory to the commissioner that the mutual contractual obligations described in this subparagraph were undertaken no later than one hundred twenty days after the original sale and that such tax was paid to the original retailer on the original sale and was remitted to the commissioner by such original retailer or by such original purchaser"); and without the ability to satisfy those prerequisites. In short, because the plaintiff alleges neither that it was the purchaser of the vehicles subject to the sales tax, nor that it was responsible for the payment of the original sales tax at the time of the original purchase giving rise to the sales tax, we cannot conclude that it was an aggrieved taxpayer under § 12-422. Hence, the plaintiff does not fall within the class of persons entitled to a refund pursuant to § 12-425 for whom the legislature waived sovereign immunity.

B

The second statute at issue in this case and the one that imposed upon the plaintiff the obligation to refund the tax to the consumer is § 42-179 (d), which is part of the lemon law, rather than the sales and use taxes statutes. Section 42-179 (d) provides in relevant part that, "[i]f the manufacturer or its agents or authorized dealers are unable to conform the motor vehicle to any applicable express warranty . . . the manufacturer shall . . . accept return of the vehicle from the consumer and refund to the consumer . . . [inter alia] (2) all collateral charges, including but not limited to, sales tax . . . ." There is nothing in the language of the statute to show that the legislature, either expressly or by force of a necessary implication, statutorily waived the state's sovereign immunity. See *Mahoney* v. *Lensink*, supra, 213 Conn. 555 ("A legislative decision to waive sovereign immunity must be manifested either by the use of express terms or by force of a necessary implica-

tion. *Struckman* v. *Burns*, 205 Conn. 542, 558, 534 A.2d 888 [1987], quoting *Murphy* v. *Ives*, 151 Conn. 259, 262–63, 196 A.2d 596 [1963]." [Internal quotation marks omitted.]).

Moreover, as this court previously has explained, the lemon law was intended to protect *consumers* of new automobiles.[8] See *Cagiva North America* v. *Schenk*, 239 Conn. 1, 12, 680 A.2d 964 (1996). "The lemon bill . . . [gives the] consumer rights against . . . the party responsible for the defective car." (Internal quotation marks omitted.) Id. Construing the statute to mandate a refund to manufacturers for taxes paid under the lemon law would do nothing to advance the legislature's remedial concerns of consumer protection, and, indeed, would undermine the incentive to provide nondefective products to consumers.

We note that the Maine Supreme Judicial Court reached a similar conclusion when considering whether manufacturers are authorized to obtain refunds for sales tax returned to consumers under that state's lemon law. See *DaimlerChrysler Corp.* v. *Executive*

---

[8] In *Cagiva North America* v. *Schenk*, 239 Conn. 1, 13, 680 A.2d 964 (1996), the court noted in explaining the intent of the lemon law: "During the committee hearings on House Bill No. 5729, the bill that ultimately became the [l]emon [l]aw, Representative John J. Woodcock, the bill's sponsor, described its purpose as follows: 'The legislative proposal before you fills a major gap in our consumer law . . . [b]ecause it will give our new car buying public relief from defective new cars . . . . What the bill does is establish a standard for when a reasonable number of repair attempts have been undertaken by a new car warrantor.' . . . Conn. Joint Standing Committee Hearings, General Law, Pt. 2, 1982 Sess., p. 233. . . .

"Woodcock later described the bill on the floor of the House of Representatives. He explained that the law was intended to address the problem of 'lemon cars' . . . 25 H.R. Proc., Pt. 10, 1982 Sess., p. 3117; and that the bill was designed 'to strengthen the new car consumer's hand.' . . . Id., p. 3118. He noted that, '[t]he rationale behind the lemon bill has been to improve and enhance the responsiveness an[d] accountability of automobile manufacturers to consumer complaints with defective new cars.' . . . Id., p. 3161. 'The lemon bill . . . [gives the] consumer rights against . . . the party responsible for the defective car.' Id., p. 3123." (Citation omitted.)

*Director, Maine Revenue Services,* 922 A.2d 465, 469–71 (Me. 2007); cf. *DaimlerChrysler Corp.* v. *Commonwealth,* 885 A.2d 117 (Pa. Commw. 2005) (discussing refund by state to manufacturer for sales tax refunded to consumer under Pennsylvania's lemon law based on tax code provision, Pa. Stat. Ann., tit. 72, § 7252, broadly authorizing refund "to the person, his heirs, successors, assigns or other personal representatives, who actually paid the tax"). Indeed, the mere fact that manufacturers such as the plaintiff refund to the consumer more than the manufacturer received does not suggest that our reading of the statute is illogical. See *Paternostro* v. *Edward Coon Co.,* 217 Conn. 42, 49, 583 A.2d 1293 (1991) ("[s]tatutes must be construed to avoid illogical, irrational results"). As one court noted in discussing Indiana's lemon law, "[the plaintiff] is not entitled to any sales tax refunds under Indiana's [l]emon [l]aw because the purpose of that state's [l]emon [l]aw is to give the consumer back exactly what it paid for as a result of the transaction and to have the manufacturer pay more than it ever received originally to suffer a financial discomfort to improve the quality of its products. See *DaimlerChrysler-Corporation* v. *Indiana Department of Revenue,* Indiana Tax Court, Cause No. 49T10-0307-TA-38, decided November 10, 2004, (2004 Ind. Tax LEXIS 105)." *DaimlerChrysler Corp.* v. *Commonwealth,* supra, 121 n.8.

In short, there is no express indication that the legislature intended to permit the manufacturer to recover any of the collateral charges such as sales tax required to be refunded to the consumer by the manufacturer upon the consumer's return of a defective vehicle. Nor does the plaintiff point to anything from which we can conclude that there is a necessary implication from the language of § 42-179 (d) that the state will assume part of the manufacturer's burden. Although the state may waive its immunity from suit by the enactment of appro-

priate legislation, we find nothing in § 42-179 (d) to support the conclusion that the legislature intended to waive immunity so that the state could assume the mandatory refund obligation imposed under the lemon law on the manufacturer.

II

The plaintiff also claims that the trial court had jurisdiction to consider the state and federal constitutional claims raised in its complaint, contending that sovereign immunity cannot be interposed as a defense when the claim against the state is for unconstitutional acts. In essence, the plaintiff claims that, because it was required by § 42-179 (d) to refund sales and use taxes to consumers, if it is precluded from obtaining a refund for those taxes pursuant to § 12-422, the state's actions would constitute a violation of, inter alia, its constitutional rights to equal protection and due process. See footnote 9 of this opinion. The plaintiff relies on this court's holding in *Tamm* v. *Burns*, 222 Conn. 280, 610 A.2d 590 (1992), for the proposition that sovereign immunity is not a bar to an action for unconstitutional acts. Its reliance is misplaced.

As we previously have stated, the sovereign immunity enjoyed by the state is not absolute. There are exceptions: (1) when the legislature, either expressly or by force of a necessary implication, statutorily waives the state's sovereign immunity; *Martinez* v. *Dept. of Public Safety*, 263 Conn. 74, 86, 818 A.2d 758 (2003); (2) when an action seeks declaratory or injunctive relief on the basis of a substantial claim that the state or one of its officers has violated the plaintiff's constitutional rights; *Doe* v. *Heintz*, 204 Conn. 17, 31, 526 A.2d 1318 (1987); and (3) when an action seeks declaratory or injunctive relief on the basis of a substantial allegation of wrongful conduct to promote an illegal purpose in excess of the officer's statutory authority. *Antinerella* v. *Rioux*, 229

Conn. 479, 497, 642 A.2d 699 (1994), overruled in part by *Miller* v. *Egan*, 265 Conn. 301, 325, 828 A.2d 549 (2003). Because we already have concluded that the first exception does not apply, we turn to the second and third exceptions. For both of these exceptions, we have imposed specific pleading requirements. For a claim made pursuant to the second exception, complaining of unconstitutional acts, we require that "[t]he allegations of such a complaint and the factual underpinnings if placed in issue, must clearly demonstrate an incursion upon constitutionally protected interests." *Barde* v. *Board of Trustees*, 207 Conn. 59, 64, 539 A.2d 1000 (1988). For a claim under the third exception, "the plaintiffs must do more than allege that the defendants' conduct was in excess of their statutory authority; they also must allege or otherwise establish facts that reasonably support those allegations." *Shay* v. *Rossi*, 253 Conn. 134, 174–75, 749 A.2d 1147 (2000), overruled in part by *Miller* v. *Egan*, supra, 325. In the absence of a proper factual basis in the complaint to support the applicability of these exceptions, the granting of a motion to dismiss on sovereign immunity grounds is proper.

Although the trial court in this case concluded that the plaintiff's allegations were insufficient, there is a more fundamental problem with the plaintiff's due process and equal protection claims.[9] It has not sought

---

[9] We recognize that "[t]he doctrine of sovereign immunity is not available to the state as a defense to claims for just compensation arising under article first, § 11, of the Connecticut constitution." (Internal quotation marks omitted.) *184 Windsor Avenue, LLC* v. *State*, 274 Conn. 302, 319, 875 A.2d 498 (2005). That claim, however, is equally unavailing to the plaintiff because it is predicated on a determination that it is an aggrieved party that has a property right in the affected property. "Whether one's interest or entitlement rises to the level of a protected property right depends upon the extent to which one has been made secure by [s]tate or [f]ederal law in its enjoyment." (Internal quotation marks omitted.) Id. In the present case, the plaintiff has not demonstrated that it had such a protected property right in the refund. In other words, it has not asserted that it had an enforceable interest that the state, by application of the lemon law, unconstitutionally took from the

declaratory or injunctive relief to remedy those viola-

plaintiff. Indeed, the purpose of the state's lemon law is to give the consumer back exactly what it paid for as a result of the transaction, and there is no indication in the statute or the legislative history that the legislature intended for manufacturers to receive a refund for taxes refunded to the consumer thereunder. "To survive a motion to dismiss on the ground of sovereign immunity, [however] a complaint 'must allege sufficient facts to support a finding of a taking of land in a constitutional sense.' " *Tamm* v. *Burns,* supra, 222 Conn. 284. We conclude that the plaintiff has failed to meet this burden. Accordingly, the claim was properly dismissed by the trial court.

Moreover, to the extent that the plaintiff's claim could be viewed as a challenge to the constitutionality of § 12-422, there is another reason that the trial court properly could not consider the claim. Although "[t]ax appeals fall within the Practice Book's definition of 'administrative appeals' "; *Loomis Institute* v. *Windsor,* 234 Conn. 169, 180, 661 A.2d 1001 (1995); see Practice Book § 14-5; they differ from other administrative appeals because only tax appeals are trials de novo. See, e.g., *Jones* v. *Crystal,* 242 Conn. 599, 602, 699 A.2d 961 (1997), overruled in part on other grounds by *Lisee* v. *Commission on Human Rights & Opportunities,* 258 Conn. 529, 542 n.16, 782 A.2d 670 (2001). "[F]or jurisdictional purposes . . . [however] we can see no distinction between tax appeals and other statutory appeals." (Internal quotation marks omitted.) *Chatterjee* v. *Commissioner of Revenue Services,* supra, 277 Conn. 688. In *Rayhall* v. *Akim Co.,* 263 Conn. 328, 339–40, 819 A.2d 803 (2003), we considered whether we had jurisdiction in an administrative appeal from the workers' compensation review board to consider a constitutional challenge to the validity of a statute that was not part of the workers' compensation scheme when the compensation review board itself lacked jurisdiction to hear the claim. We concluded that General Statutes § 31-301b provided a jurisdictional basis to consider the challenge because that statute provides that "[a]ny party aggrieved by the decision of the Compensation Review Board upon any question or questions of law arising in the proceedings may appeal the decision of the Compensation Review Board to the Appellate Court." See *Rayhall* v. *Akim Co.,* supra, 339–40. Therefore, the statutory language regarding workers' compensation expressly permitted the court to consider those issues actually decided by the compensation review board *and* those issues that presented themselves in the proceedings or became operative as a result of the compensation review board's decision. Id., 340. In *Fullerton* v. *Administrator, Unemployment Compensation Act,* 280 Conn. 745, 762, 911 A.2d 736 (2006), we held that there was "no analogous provision in the unemployment compensation scheme. An appeal to the Superior Court from a decision of the [compensation review board (board)] is permitted pursuant to General Statutes § 31-249b, which simply provides that '[a]t any time before the board's decision has become final, any party, including the administrator, may appeal to the superior court . . . .' There is no language in this or any other unemployment compensation statute suggesting that the court may hear claims on

tions. Cf. *Horton* v. *Meskill*, 172 Conn. 615, 628, 376 A.2d 359 (1977) (concluding that sovereign immunity did not bar plaintiffs' claim seeking declaratory judgment that system of financing public elementary and secondary education in this state violated state constitution, when plaintiffs alleged that governmental officials were acting pursuant to unconstitutional statute or in excess of statutory authority in implementing system). The plaintiff's request for relief—an order that the defendant refund all sales taxes for which the plaintiff had submitted a claim for refund—must be characterized as a claim for damages. See *Gonsalves* v. *Internal Revenue Service*, 975 F.2d 13, 16 (1st Cir. 1992) (treating constitutional claims arising from failure to refund taxes as action for damages); *Johnsen* v. *Collins*, 875 F. Sup. 1571, 1577 (S.D. Ga. 1994) (claim for tax refund is action for damages and hence barred by sovereign immunity).

"When a plaintiff brings an action for money damages against the state, he must proceed through the office of the claims commissioner pursuant to chapter 53 of the General Statutes, §§ 4-141 through 4-165. Otherwise, the action must be dismissed for lack of subject matter jurisdiction under the doctrine of sovereign immunity." *Prigge* v. *Ragaglia*, 265 Conn. 338, 349, 828 A.2d 542 (2003). This is the case even if the claims are brought pursuant to the United States constitution. See id. (dismissing causes of action seeking money damages based on, inter alia, first and fourteenth amendments to United States constitution when permission to sue not received from claims commissioner); *Krozser* v. *New Haven*, 212 Conn. 415, 422, 562 A.2d 1080 (1989) (42 U.S.C. § 1983

appeal from the board over which the board lacks jurisdiction." Similarly, in the present case, as the discussion in the first issue in this appeal demonstrates, the grant of jurisdiction in § 12-422 is circumscribed, and there is no such grant of jurisdiction to consider any such constitutional challenge. Accordingly, the trial court could not consider any such constitutional claim regarding the validity of § 12-422.

"does not abrogate the common law doctrine of sovereign immunity"), cert. denied, 493 U.S. 1036, 110 S. Ct. 757, 107 L. Ed. 2d 774 (1990).

Accordingly, we reject the plaintiff's contention that sovereign immunity did not deprive the trial court of jurisdiction to consider the plaintiff's claim that the statutory obligation imposed by § 42-179 (d) resulted in violations of its constitutional rights. For purposes of the issue before us, it is without significance that it is the defendant's decision denying the refund pursuant to § 12-422 that gives rise to the constitutional claim. The plaintiff in this case sought money damages from the state for these alleged violations. The plaintiff has not received permission from the claims commissioner to bring the action, nor has it pleaded a valid exception to the doctrine of sovereign immunity.[10] Accordingly, the trial court properly granted the defendant's motion to dismiss, as these claims are barred by sovereign immunity.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[10] Furthermore, as we have explained in footnote 9 of this opinion, there is another basis upon which to conclude that the trial court did not have jurisdiction to consider the state and federal constitutional claims raised in its complaint—the grant of jurisdiction in § 12-422, which is very limited, does not afford a jurisdictional basis to consider the constitutional challenges.