******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# LARISSA MARLAND, ADMINISTRATRIX (ESTATE OF NORMAN MARLAND), ET AL. *v.* UNIVERSITY OF CONNECTICUT HEALTH CENTER ET AL.
(SC 20854)

McDonald, D'Auria, Mullins, Ecker, Alexander and Dannehy, Js.*

*Syllabus*

The plaintiff, individually and as administratrix of the estate of the decedent, appealed from the judgment of the trial court, which had dismissed the plaintiff's medical malpractice action against the state defendants for lack of subject matter jurisdiction. In dismissing the action, the trial court specifically concluded that the claims commissioner's waiver of the state's sovereign immunity pursuant to statute ((Rev. to 2015) § 4-160 (b)) was not valid because the purported waiver occurred after the expiration of a one year extension of time that the General Assembly had granted to the commissioner to dispose of the plaintiff's claim. The plaintiff contended that the trial court had incorrectly concluded that the commissioner's waiver was not valid. *Held*:

This court concluded that the present case was controlled by its recent decision in *Lynch* v. *State* (348 Conn. 478), in which this court held that, unlike the more typical claim that the allegations in a plaintiff's complaint do not fall within the scope of the claims commissioner's waiver of sovereign immunity, a challenge to the commissioner's decision to waive sovereign immunity and to grant permission to sue the state is not reviewable by a court, and such a challenge should be raised before the claims commissioner, if at all.

In the present case, the defendants' challenge in the trial court to the plaintiff's claims did not concern whether those claims fell within the scope of the waiver of sovereign immunity granted by the claims commissioner, as they undisputably did, but, rather, concerned whether the commissioner had the authority to grant a waiver of sovereign immunity after the expiration of the one year extension granted by the legislature.

The defendants failed to raise their claim regarding the authority of the claims commissioner to waive sovereign immunity before the commissioner in the first instance, once the commissioner authorized suit, the defendants waived all defenses to the claims commissioner's decision, and that decision was insulated from collateral attack.

---

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

Accordingly, the trial court improperly dismissed the plaintiff's action for lack of subject matter jurisdiction.

Argued September 16—officially released December 17, 2024

*Procedural History*

Action to recover damages for the defendants' alleged medical malpractice, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *S. Connors, J.*, granted the defendants' motion to dismiss and rendered judgment thereon, from which the plaintiffs appealed. *Reversed*; *judgment directed.*

*Bruce Edward Newman*, for the appellants (plaintiffs).

*Michael G. Rigg*, for the appellees (defendants).

*Opinion*

MULLINS, J. This appeal arises from a claim of medical malpractice initiated by the plaintiff, Larissa Marland, individually and as administratrix of the estate of the decedent, Norman Marland,[1] against the defendants, the University of Connecticut Health Center, UConn Health Partners, and UConn John Dempsey Hospital (collectively, the state).[2] After the claims commissioner waived the state's sovereign immunity and granted the plaintiff permission to sue the state, the plaintiff filed the present action in the Superior Court. The state moved to dismiss the complaint, asserting that the claims commissioner's failure to timely dispose of the plaintiff's claim deprived the commissioner of the authority to waive the state's sovereign immunity and to grant the plaintiff permission to sue the state. The trial court agreed with the state and dismissed this action. This appeal requires us to decide whether the state can chal-

---

[1] For simplicity, we refer to Larissa Marland, in both her individual capacity and as administratrix of the decedent's estate, as the plaintiff.

[2] The parties do not dispute that these entities are all operated by the state of Connecticut, and we will refer to the defendants collectively as the state.

lenge, in the Superior Court, the decision of the claims commissioner to grant permission to sue under General Statutes (Rev. to 2015) § 4-160 (b)[3] for medical malpractice. We conclude that, once the claims commissioner grants permission to sue the state and waives sovereign immunity, the state cannot challenge that decision in the Superior Court. Accordingly, we reverse the judgment of the trial court dismissing the plaintiff's complaint.

The record reveals the following facts and procedural history. In the weeks prior to his death, the decedent had received inpatient treatment at UConn John Dempsey Hospital (hospital) on two occasions. After the decedent's last inpatient treatment, hospital personnel discharged him to a short-term rehabilitation facility for follow-up care.

Soon thereafter, the decedent returned to the emergency department at the hospital because he began experiencing medical issues. The hospital staff admitted him to the intensive care unit for cardiac monitoring and oxygen, intravenous fluids and antibiotic therapy. Upon the decedent's admission to the intensive care unit, hospital staff assessed him to be a fall risk.

Only a few hours after his admission to the intensive care unit, at approximately 3:14 a.m. on January 3, 2015, the decedent fell out of his bed. There were no witnesses to the fall. Hospital staff found him on his back, lying

---

[3] General Statutes (Rev. to 2015) § 4-160 (b) provides that, "[i]n any claim alleging malpractice against the state, a state hospital or a sanitorium or against a physician, surgeon, dentist, podiatrist, chiropractor or other licensed health care provider employed by the state, the attorney or party filing the claim may submit a certificate of good faith to the Claims Commissioner in accordance with section 52-190a. If such a certificate is submitted, the Claims Commissioner shall authorize suit against the state on such claim."

Hereinafter, unless otherwise indicated, all references to § 4-160 are to the 2015 revision of the statute.

face up and unresponsive. He was breathing but had no pulse. He died approximately nineteen minutes after his fall.

On December 17, 2015, pursuant to § 4-160 (b), the plaintiff filed a notice of claim with the claims commissioner, seeking permission to sue the state for medical malpractice, both individually and in her representative capacity as administratrix of the decedent's estate. In the notice of claim, the plaintiff alleged that the employees and agents of the state caused the decedent's injuries by departing from the applicable standard of care. The plaintiff also submitted a physician's opinion letter to the claims commissioner, which described the physician's reasons for concluding that the state had failed to meet the appropriate standard of care relating to the decedent's medical treatment.

On February 27, 2018, the claims commissioner sent a letter to the plaintiff notifying her of, and apologizing to her for, the failure to resolve her claim within two years of its filing. In a separate letter, the claims commissioner also informed the plaintiff that, pursuant to General Statutes (Rev. to 2017) § 4-159a (a),[4] the commissioner had reported the plaintiff's unresolved claim to the General Assembly. On May 9, 2018, pursuant to § 4-159a (c), the General Assembly granted the claims commissioner an extension for a period of one year from that date to dispose of the plaintiff's claim.

---

[4] General Statutes (Rev. to 2017) § 4-159a (a) provides: "Not later than five days after the convening of each regular session, the Office of the Claims Commissioner shall report to the General Assembly on all claims that have been filed with the Office of the Claims Commissioner pursuant to section 4-147 and have not been disposed of by the Office of the Claims Commissioner within two years of the date of filing or within any extension thereof granted by the General Assembly pursuant to subsection (c) of this section, except claims in which the parties have stipulated to an extension of time for the Office of the Claims Commissioner to dispose of the claim."

Hereinafter, all references to § 4-159a are to the 2017 revision of the statute.

The claims commissioner failed to dispose of the claim within that one year extension. Instead, on November 25, 2020, approximately eighteen months after the one year extension had expired, the claims commissioner concluded that the plaintiff's claim had satisfied the requirements of § 4-160 (b) and consequently granted the plaintiff's request for permission to sue the state for medical malpractice. The state took no action to challenge that decision before the claims commissioner.

The plaintiff subsequently commenced the present action. In count one of her complaint, the plaintiff alleged medical malpractice on behalf of the decedent's estate. In count two of her complaint, the plaintiff alleged medical malpractice against the state in her individual capacity. More specifically, the plaintiff alleged in the complaint that the state had breached the applicable standard of care owed to the decedent as a patient in the intensive care unit. The plaintiff also alleged that, pursuant to § 4-160 (b), "permission to sue the state . . . was granted by way of a decision signed by . . . the claims commissioner on November 25, 2020 . . . ."

Before the trial court, the state moved to dismiss the plaintiff's complaint on the ground that the waiver of sovereign immunity issued by the claims commissioner pursuant to § 4-160 (b) was not valid. The state asserted that the waiver was invalid for two reasons: (1) it was issued after the expiration of the one year extension granted by the General Assembly pursuant to § 4-159a (c); and (2) the plaintiff failed to file with the claims commissioner an opinion letter from a " 'similar health care provider,' " as required by General Statutes § 52-190a (a).

The trial court granted the state's motion to dismiss. The trial court explained that, at the time the claims

commissioner granted the waiver in the present case, the commissioner no longer had authority to do so because the one year extension of time granted by the General Assembly pursuant to § 4-159a (c) had expired. Because there had been no valid waiver of the state's sovereign immunity, the trial court concluded that it did not have subject matter jurisdiction over the plaintiff's claims. As a result, the court did not address the state's claim regarding the sufficiency of the opinion letter submitted to the claims commissioner. This appeal followed.[5]

We begin by setting forth certain fundamental principles that are not in dispute. "The principle that the state cannot be sued without its consent . . . has deep roots in this state and our legal system in general, finding its origin in ancient common law." (Internal quotation marks omitted.) *DaimlerChrysler Corp.* v. *Law*, 284 Conn. 701, 711, 937 A.2d 675 (2007). "[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." (Internal quotation marks omitted.) *Columbia Air Services, Inc.* v. *Dept. of Transportation*, 293 Conn. 342, 347, 977 A.2d 636 (2009).

"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the trial court's ultimate legal conclusion and resulting [decision on] . . . the motion to dismiss will be de novo." (Internal quotation marks omitted.) Id., 346–47.

---

[5] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

"When a trial court decides a jurisdictional question raised by a pretrial motion to dismiss on the basis of the complaint alone, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *Conboy* v. *State*, 292 Conn. 642, 651, 974 A.2d 669 (2009).

On appeal, the plaintiff asserts that the trial court improperly dismissed her complaint for lack of subject matter jurisdiction because she, in fact, had complied with all statutory requirements for filing her suit in the Superior Court and had received authorization to sue the state from the claims commissioner. At oral argument before this court, the plaintiff's attorney expounded on this point, arguing that, because the state had failed to raise any claim before the claims commissioner regarding the commissioner's allegedly untimely decision and the impact, if any, that had on the commissioner's authority to grant permission to sue the state, the claims commissioner's ultimate decision to authorize suit is not subject to review by the courts.[6]

The state's counsel disagreed and asserted that the authority of the claims commissioner is a question of statutory interpretation, which the courts have jurisdiction to decide. The state's counsel further asserted that the trial court correctly concluded that it did not have subject matter jurisdiction over the plaintiff's claims

---

[6] In making this argument, the plaintiff's attorney relied on *Lynch* v. *State*, 348 Conn. 478, 501–504, 308 A.3d 1 (2024), which was issued after the briefs in this case were filed. In *Lynch*, we held that, once the claims commissioner authorizes suit against the state, the state is precluded from challenging that decision in court. See id., 502–504. At oral argument, the state's counsel responded to the argument of the plaintiff's attorney without precisely addressing *Lynch*.

because § 4-159a limits the jurisdiction of the claims commissioner to act within the time frame provided by the General Assembly. Therefore, the state's counsel contended, at the time the claims commissioner authorized suit in the present case, the commissioner did not have authority to do so given that the commissioner's decision was issued beyond the one year extension of time granted by the General Assembly.

We agree with the plaintiff. As this court previously has recognized, the waiver of the state's sovereign immunity "is a matter for legislative, not judicial, determination." (Internal quotation marks omitted.) *Struckman* v. *Burns*, 205 Conn. 542, 558, 534 A.2d 888 (1987). We conclude that the current appeal is controlled by our recent decision in *Lynch* v. *State*, 348 Conn. 478, 501–504, 308 A.3d 1 (2024), and that, to the extent that the state disputed the authority of the claims commissioner to authorize suit beyond the one year extension of time granted by the legislature, it was incumbent on it to raise that issue before the claims commissioner while the matter was still under the commissioner's review.

Before addressing the state's claim in more detail, it is helpful to review the historical background informing our understanding of the role of the claims commissioner in processing claims against the state. "Historically, the legislature of this state would grant compensation, through the enactment of special acts, to citizens who were injured or who had other claims against the state. Indeed, prior to 1959, before the legislature created . . . the claims commission, the General Assembly in the first instance considered what action, if any, was appropriate on claims made against the state. That is, the General Assembly either authorized payment of a claim against the state, or authorized an action to be brought against the state in court [or denied the claim altogether]. The standard for the recompense

was whether justice required the state to pay for an injury it had caused. It is important to note that the predicate was not that the state was liable for such compensation, but, rather, that justice and equity required that the state make the payment or that the state respond to an action as if it were a private person. . . .

"It reached a point where the number of claims submitted to the legislature became a major burden and this interfered with the more important function of enacting general legislation. When legislation was proposed by the legislative council to establish a claims commission in order to relieve the General Assembly of a major portion of this burden, its director, George Oberst, explained the need to establish this alternative procedure for the processing of claims in order to ensure that 'equity and justice' [are] done.[7] A statutory procedure for the disposition of claims against the state, to be administered by a claims commission, was adopted

---

[7] "In 1959, Oberst testified as follows: 'Because of the doctrine of sovereign immunity, the [s]tate, unlike most of its citizens, is immune from liability and from suit; that is, without its consent the [s]tate cannot be held liable in a legal action for any damage or injury it may cause. By general law, the [g]overnor and the [c]omptroller have authority to settle claims of a very minor nature. But traditionally it is the duty of the General Assembly to hear and decide the great variety of demands made [on] the [s]tate for the payment of money. When claims are few in number and the financial outlay is small, legislative determination can function efficiently. But as the number of claims increases and demands [on] the [Office of the Treasurer] grow in size, the legislative process becomes progressively incapable of handling them efficiently. Other more important demands [on] the time of legislators and the natural limitations of legislative investigation do not always [e]nsure a just determination. This natural inadequacy is further complicated by the fact that some unsatisfied claimants reappear every session with the same claims, forcing the legislature into useless repetition. Despite an earnest desire to honor legitimate claims, there is little to [ensure] the equity and justice which the state rightly demands and which claimants rightly deserve.' Conn. Joint Standing Committee Hearings, Appropriations, Pt. 3, 1959 Sess., pp. 919–20." *Chotkowski* v. *State*, 240 Conn. 246, 273 n.8, 690 A.2d 368 (1997) (*Berdon, J.*, concurring and dissenting).

by the enactment of [No. 685 of the 1959 Public Acts]. Subsequently, in 1975, the legislature substituted a claims commissioner . . . for the claims commission. See Public Acts 1975, No. 75-605. Therefore, *the* [*claims*] *commissioner is in reality the conscience of the state*, assuming in part the prior role of the legislature to ensure that justice and equity [are] done. It is the [claims] commissioner who now determines what claims should be paid, what claims should be referred to the legislature for payment, or which claimants should be authorized to institute an action against the state." (Emphasis added; footnote in original; footnotes omitted.) *Chotkowski* v. *State*, 240 Conn. 246, 271–74, 690 A.2d 368 (1997) (*Berdon, J.*, concurring and dissenting); see also *Nelson* v. *Dettmer*, 305 Conn. 654, 670, 46 A.3d 916 (2012).

With that history in mind, we turn to the plaintiff's claim in the present case, namely, that the trial court improperly dismissed her complaint on the ground that the court lacked subject matter jurisdiction. Specifically, the plaintiff asserts that the trial court incorrectly concluded that the claims commissioner did not have authority to waive the state's sovereign immunity beyond the one year extension granted by the legislature pursuant to § 4-159a (c).

At the time that the plaintiff filed her medical malpractice claim with the claims commissioner, General Statutes (Rev. to 2015) § 4-160 (b) provided: "In any claim alleging malpractice against the state, a state hospital or a sanitorium or against a physician, surgeon, dentist, podiatrist, chiropractor or other licensed health care provider employed by the state, the attorney or party filing the claim may submit a certificate of good faith to the Claims Commissioner in accordance with section 52-190a. If such a certificate is submitted, the Claims Commissioner shall authorize suit against the state on such claim."

This court previously has explained that "the effect of § 4-160 (b) was to deprive the claims commissioner of his [or her] broad discretionary decision-making power to authorize suit against the state in cases [in which] a claimant has brought a medical malpractice claim and filed a certificate of good faith. Instead, § 4-160 (b) requires the claims commissioner to authorize suit in all such cases. In other words, the effect of the statute was to convert a limited waiver of sovereign immunity to medical malpractice claims, subject to the discretion of the claims commissioner, to a more expansive waiver subject only to the claimant's compliance with certain procedural requirements." (Emphasis omitted; footnote omitted.) *D'Eramo* v. *Smith*, 273 Conn. 610, 622, 872 A.2d 408 (2005).[8] Therefore, § 4-160 (b) conveys the legislature's intent to waive sovereign immunity with respect to all medical malpractice claims filed with the claims commissioner that are accompanied by a good faith certificate.

We have recently examined this statutory scheme in *Lynch* v. *State*, supra, 348 Conn. 501–504, and we conclude that *Lynch* controls the resolution of the issue presented in this appeal. In *Lynch*, the claims commissioner had authorized the plaintiffs' medical malpractice claim pursuant to § 4-160 (b). Id., 489. The plaintiffs filed suit in the Superior Court and obtained a judgment against the state. See id., 484, 489, 491. The state claimed

---

[8] In 2019, the legislature amended § 4-160 to allow plaintiffs to bypass the claims commissioner altogether and to bring a medical malpractice action directly to the Superior Court in accordance with § 52-190a (a) prior to the expiration of the limitation period. See Public Acts 2019, No. 19-182, § 4. This amendment has no bearing on this appeal because, at that time, the limitation period on the plaintiff's action had expired. See General Statutes § 4-148 (a).

Section 4-160 has also been amended a number of times since the claims commissioner authorized the plaintiff's action; see Public Acts 2024, No. 24-44, § 12; Public Acts 2023, No. 23-131, § 10; Public Acts 2022, No. 22-37, §§ 3 and 4; Public Acts 2021, No. 21-91, § 6; but those amendments also have no bearing on this appeal.

that the judgment against it should be set aside because of "the plaintiffs' failure to submit to the claims commissioner (1) a physician's opinion letter specifically addressing the plaintiffs' . . . claims, and (2) an attorney's certificate of good faith." Id., 501. This court rejected the state's claim. See id.

We relied on the same version of the statute at issue in the present case, General Statutes (Rev. to 2015) § 4-160 (c), which provides in relevant part that, "[i]n each action authorized by the Claims Commissioner pursuant to subsection (a) or (b) of this section or by the General Assembly pursuant to section 4-159 or 4-159a . . . [t]he state waives its immunity from liability and from suit . . . *and waives all defenses which might arise from the . . . governmental nature of the activity complained of.* The rights and liability of the state in each such action shall be coextensive with and shall equal the rights and liability of private persons in like circumstances." (Emphasis added.) See *Lynch* v. *State*, supra, 348 Conn. 501–502.

We reasoned that "[i]t is clear from the statutory scheme, therefore, that, once the claims commissioner authorized the plaintiffs' medical malpractice action, the state was precluded from raising a sovereign immunity defense to 'the activity complained of' in the notice of claim. General Statutes (Rev. to 2015) § 4-160 (c)." *Lynch* v. *State*, supra, 348 Conn. 502. We further reasoned that "the claims commissioner authorized the plaintiffs to bring a medical malpractice action, the plaintiffs' claims [fell] squarely within the scope of that authorization, and the authorization [was] consistent with the legislature's decision to waive the state's sovereign immunity with respect to medical malpractice claims." Id., 502–503.

We further explained that one of the state's jurisdictional claims in *Lynch* was not of the type that is nor-

mally reviewable by this court. See id., 502; see also, e.g., *Escobar-Santana* v. *State*, 347 Conn. 601, 605, 298 A.3d 1222 (2023) (deciding whether, for purposes of what is now General Statutes § 4-160 (f), "the statutory phrase 'medical malpractice claims' is broad enough to encompass a mother's allegation that she suffered emotional distress damages from physical injuries to her child that were proximately caused by the negligence of health care professionals during the birthing process"). In particular, in *Lynch*, one of the state's claims was that the claims commissioner had erred in waiving sovereign immunity and granting permission to sue, rather than the more typical claim that the allegations in a plaintiff's complaint do not fall within the waiver of sovereign immunity granted by the claims commissioner. See *Lynch* v. *State*, supra, 348 Conn. 502–503. We concluded that this type of claim was not reviewable by this court because, rather than challenge the plaintiffs' action as not authorized by the claims commissioner, the state challenged the decision of the claims commissioner itself, which we held is not subject to collateral attack even by the state as a litigant, and that the claim should have been raised before the claims commissioner, if at all. See id., 502–504. Ultimately, we concluded that, "[t]o the extent the state [as a litigant] disputed the applicability of § 4-160 (b) because of alleged defects or shortcomings in the plaintiffs' good faith certificate, it was incumbent on it to raise the issue with the claims commissioner while the matter was still under [the commissioner's] review." (Emphasis omitted.) Id., 503.

As grounds for our conclusion in *Lynch*, we reasoned that "§ 4-160 (c) operates in a manner similar to General Statutes § 4-164 (b), which provides in relevant part that '[t]he action of the . . . Claims Commissioner in approving or rejecting payment of any claim or part thereof shall be final and conclusive on all questions

of law and fact and shall not be subject to review except by the General Assembly.' " Id. We further explained that "[t]his court has held that the claims commissioner 'performs a legislative function directly reviewable only by the General Assembly.' *Circle Lanes of Fairfield, Inc.* v. *Fay*, 195 Conn. 534, 541, 489 A.2d 363 (1985); see also *Cooper* v. *Delta Chi Housing Corp. of Connecticut*, 41 Conn. App. 61, 64, 674 A.2d 858 (1996) ('The legislature has established a system for the determination of claims against the state. . . . A significant part of that system is the appointment of a claims commissioner . . . who is vested with sole authority to authorize suit against the state.' . . . ). The legislature's decision to insulate the claims commissioner's decision under § 4-160 (b) from collateral attack by the state is consistent with the broader statutory scheme." *Lynch* v. *State*, supra, 348 Conn. 503–504. This conclusion is consistent with the well established principle that the Superior Court does not have jurisdiction to hear an appeal from a decision of the claims commissioner that challenges the commissioner's decision to grant or deny permission to sue. See, e.g., *Circle Lanes of Fairfield, Inc.* v. *Fay*, supra, 536, 541 (reaffirming that trial court did not have jurisdiction to hear administrative appeal from decision of claims commissioner in which commissioner denied authorization to sue).

As in *Lynch*, in the present case, the state's challenge to the plaintiff's claims does not concern whether the claims fall within the scope of the waiver of sovereign immunity granted by the claims commissioner. Indeed, here, they clearly do. It is undisputed that the activities complained of in the present case, and for which the claims commissioner granted permission to sue, were "acts of alleged medical negligence" that were squarely within the scope of the waiver. Therefore, once the claims commissioner authorized suit in the present case, the state waived all defenses to the decision of

the claims commissioner; see, e.g., *Lynch* v. *State*, supra, 348 Conn. 493, 501; and that decision was insulated from collateral attack. See, e.g., id., 503–504. Thus, we conclude that, if the state disputed the authority of the claims commissioner to issue permission to sue past the one year extension granted by the legislature, the state should have raised this claim before the claims commissioner. Its failure to do so is fatal to its claim.[9] Accordingly, we conclude that the trial court improperly granted the state's motion to dismiss.

The judgment is reversed and the case is remanded with direction to deny the state's motion to dismiss.

In this opinion the other justices concurred.

_____

---

[9] To the extent the state asserts that this court should address its claim in its motion to dismiss that the opinion letter that the plaintiff filed with the claims commissioner was deficient, we decline to do so for the same reason. It is clear from the record that the claims commissioner reviewed the plaintiff's notice of claim and the physician's opinion letter, and considered this issue before authorizing suit. As we have explained, the statutory scheme demonstrates that the legislature intended to "insulate the claims commissioner's decision under § 4-160 (b) from collateral attack by the state . . . ." *Lynch* v. *State*, supra, 348 Conn. 503–504.