# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1806
_____

Jason Carter

*Plaintiff - Appellant*

v.

Mark D. Ludwick, Agent of Iowa Department of Criminal Investigation, in his individual capacity; Marion County, Iowa; Reed Kious, Marion County Deputy Sheriff in his individual capacity

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Southern District of Iowa - Central
_____

Submitted: March 18, 2025
Filed: June 12, 2025
_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

On December 15, 2017, Jason Carter was found civilly liable for the wrongful death of his mother, Shirley Carter.[1]  A few days later, Iowa Division of Criminal

---

[1]For clarity, this opinion refers to Plaintiff Jason Carter by his last name and Shirley Carter by her first name.

Investigation (DCI) Agent Mark Ludwick and Marion County Deputy Sherrif Reed Kious arrested Carter for first-degree murder, but Carter was eventually acquitted after a jury trial. Carter then filed this 42 U.S.C. § 1983 action against[2] Ludwick and Kious (the Defendants), alleging his constitutional and state-law rights were violated based on Defendants' conduct during the investigation of Shirley's murder. The district court[3] dismissed Carter's complaint in full, holding that Ludwick and Kious were entitled to qualified immunity on all of Carter's federal claims and that Carter failed to state a claim for relief on his remaining state law claims. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.

While we accept all well-pleaded allegations in the complaint as true on a motion to dismiss, we may also rely on the facts as recited by the Iowa Supreme Court when ruling on Carter's civil wrongful death case, as the case is subject to judicial notice. See Miller v. Redwood Toxicology Lab'y, Inc., 688 F.3d 928, 931 n.3 (8th Cir. 2012); Fed. R. Evid. 201(b)(2). Thus, we accept as true Carter's allegations in his complaint insofar as they do not conflict with Carter v. Carter, 957 N.W.2d 623, 631 (Iowa 2021).

In 2015, Shirley Carter was found dead in her home after suffering two gunshot wounds. Id. at 629. For two and a half years, Ludwick and Kious worked the case, receiving a myriad of leads, interviewing some suspects multiple times, and sifting through allegations based on multiple levels of hearsay. Ultimately, Ludwick

---

[2]Marion County was dismissed from this suit in 2021 after this Court held Carter failed to allege a pattern of unconstitutional conduct. Thus, this appeal addresses Carter's remaining claims that pertain only to Ludwick and Kious.

[3]The Honorable Stephanie M. Rose, Chief Judge, United States District Court for the Southern District of Iowa.

and Kious focused the investigation on Shirley's son, Carter, because Carter appeared to have inside knowledge of what happened to Shirley:

> For example, [Carter] told the 911 operator that Shirley looked like she had been on the floor for two hours. An officer testified that when he arrived at the scene [Carter] said she had been shot. To the contrary, [Carter's father] testified that when he arrived at the house, he could not tell Shirley had been shot. [Carter's brother] testified that on the day of the murder [Carter] asked him if he thought the killer "had to rack another round."

Id. at 636. Further, Carter told law enforcement that he "had never touched the gun safe" that housed the murder weapon and had not "known his parents had one until Shirley's death," though his fingerprints were found on the safe. Id. at 629.

Before Ludwick and Kious brought criminal charges against Carter, Carter's father and brother (the Civil Plaintiffs) sued him for Shirley's wrongful death. During discovery, the Civil Plaintiffs subpoenaed the criminal file that Ludwick and Kious were building against Carter from the DCI. The DCI and the Civil Plaintiffs reached an agreement, through which the DCI provided only part of the criminal file being built against Carter. Carter moved to quash the subpoena, arguing it was unfair for the Civil Plaintiffs to receive discovery without the DCI also providing him with reciprocal discovery. Id. at 633. The trial court denied the motion, and the Iowa Supreme Court later affirmed. Id. at 634-35. Based on the evidence at trial, the jury found by a preponderance of the evidence that Carter wrongfully caused Shirley's death. Id. at 628, 637.

One day after this verdict, Ludwick signed the criminal complaint seeking a warrant to arrest Carter. The affidavit included several statements that lined up with the evidence adduced at the civil trial: that Carter's statements to law enforcement were inconsistent; that Carter's fingerprints were found on the gun safe in Shirley's home despite Carter's statement that he had never touched the safe; and that Carter gave investigators details of the crime that were unavailable to the public. Id. at 629,

636. Two days later, Carter contested probable cause at a preliminary hearing, but the court found that there was probable cause to arrest Carter. Carter was arrested and charged with first-degree murder.

During the criminal discovery process, Carter obtained exculpatory evidence that he did not receive during discovery in the civil wrongful death suit. He petitioned to vacate the civil judgment against him based on this evidence, ultimately appealing to the Iowa Supreme Court. See id. at 638-29. The Iowa Supreme Court denied his petition and affirmed the civil judgment. Id. at 646. While that appeal was pending, Carter's criminal case went to trial, and he was acquitted. Id. at 631. Carter then brought this § 1983 action against Ludwick, Kious, and Marion County. He alleged federal and state constitutional claims of false arrest, concealment of evidence, and failure to investigate against Ludwick and Kious in violation of the Fourth, Fifth, and Fourteenth Amendments and the Iowa constitution; one false arrest claim against Marion County; and two state law claims of abuse of process and malicious prosecution against Kious.

Carter filed his original complaint in December 2019 and his operative second amended complaint in May 2020. The Defendants filed a motion to dismiss, which the district court granted in full based on the Rooker-Feldman[4] doctrine. On appeal, this Court affirmed the dismissal of the Monell[5] claim against Marion County on an alternative basis—Carter's failure to plead a pattern of unconstitutional conduct—but reversed the dismissal of all other claims against Ludwick and Kious, determining that Rooker-Feldman was inapplicable. Carter v. Ludwick, 854 F. App'x 107, 108 (8th Cir. 2021) (per curiam). On remand, the district court issued a blanket denial of Ludwick's and Kious's motions to dismiss the remaining claims, and the Defendants filed an interlocutory appeal. We again remanded, ordering the

---

[4]See Rooker v. Fid. Tr. Co., 263 U.S. 413, 415-16 (1923); D.C. Ct. of Appeals v. Feldman, 460 U.S. 462, 476 (1983).

[5]Monell v. Dep't of Soc. Servs. of NYC, 436 U.S. 658 (1978).

-4-

district court to rule on the defense of qualified immunity and provide a meaningful basis for this Court to review the decision. Carter v. Ludwick, No. 21-3510, 2022 WL 16707933, at *1 (8th Cir. Nov. 4, 2022) (per curiam).

On remand, the district court fully considered Defendants' qualified immunity defense. In doing so, the court took judicial notice of the Iowa Supreme Court decision against Carter, see Carter, 957 N.W.2d at 623, and deemed the arrest warrant, Ludwick's affidavit supporting the warrant, and the order following the preliminary hearing all incorporated by reference in Carter's complaint. On the merits, the district court concluded that Ludwick and Kious were entitled to qualified immunity because Carter failed to plausibly allege a constitutional violation. For count one, false arrest, the district court found that the arrest was conducted "pursuant to a facially valid arrest warrant," so Carter needed to undermine the warrant to state a claim. Because Carter failed to allege facts demonstrating the invalidity of the affidavit, the district court held that there was arguable probable cause to arrest Carter and granted Ludwick and Kious qualified immunity. On count two, evidence concealment in violation of due process, the court granted qualified immunity because it was an "entirely novel claim" that was not clearly established. Finally, the district court granted qualified immunity on count six, failure to investigate, because "[a]t best, the allegations contained in the [complaint] ma[d]e out a claim for a negligent and subpar investigation . . . . not . . . a deliberate . . . or reckless[]" one. The district court also ruled that Carter could not prevail on the merits of his malicious prosecution and abuse of process claims against Kious under Iowa law, noting the presence of probable cause to arrest Carter and the lack of improper motive in bringing criminal charges for Shirley's death. Carter now appeals.

## II.

Carter first argues that the district court improperly converted the motion to dismiss into one for summary judgment by considering the arrest warrant and criminal complaint as they were outside the scope of his initial pleading. "Though

'matters outside the pleading' may not be considered in deciding a Rule 12 motion to dismiss, documents 'necessarily embraced by the complaint' are not matters outside the pleading." Enervations, Inc. v. Minn. Mining & Mfg. Co., 380 F.3d 1066, 1069 (8th Cir. 2004) (first quoting Fed. R. Civ. P. 12(d), then quoting BJC Health Sys. v. Columbia Cas. Co., 348 F.3d 685, 687 (8th Cir. 2003)). Therefore, courts may consider "matters incorporated by reference or integral to the claim" without converting a motion to dismiss into one for summary judgment. Miller, 688 F.3d at 931 n.3. Carter frequently references the criminal complaint and arrest warrant throughout his own pleading. See, e.g., R. Doc. 30, at 71 ("Defendant Kious . . . help[ed] to prepare and file a criminal complaint . . . that . . . was not supported by probable cause."). Both documents were incorporated by reference in Carter's complaint, and the district court did not convert the motion into one for summary judgment by considering them.

"This court reviews a Rule 12(b)(6) dismissal based on qualified immunity de novo." Kulkay v. Roy, 847 F.3d 637, 641 (8th Cir. 2017). "[Q]ualified immunity is an affirmative defense [that] will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." Weaver v. Clarke, 45 F.3d 1253, 1255 (8th Cir. 1995) (citation omitted). "Qualified immunity shields a public official from suit for civil damages when his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Bernini v. City of St. Paul, 665 F.3d 997, 1002 (8th Cir. 2012) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Thus, an officer is entitled to qualified immunity "unless (1) the evidence, viewed in the light most favorable to the plaintiffs, establishes a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of the violation, such that a reasonable officer would have known that his actions were unlawful." Id. A right is clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Cent. Specialties, Inc. v. Large, 18 F.4th 989, 996 (8th Cir. 2021) (citation omitted). "[T]he plaintiff has the burden of demonstrating that the law confirming [his] constitutional right was clearly established . . . ." Hanson v. Best, 915 F.3d 543, 548 (8th Cir. 2019). This

-6-

inquiry does not require "a case directly on point, but existing precedent must have placed the . . . constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011). This Court "ha[s] discretion . . . to resolve the appeal under either step of this analysis." Berini, 665 F.3d at 1002.

## A.

Carter first challenges the grant of qualified immunity to Ludwick and Kious on his false arrest claim. He was arrested pursuant to a warrant, but "[w]here the alleged Fourth Amendment violation involves a . . . seizure pursuant to a warrant, the fact that a neutral magistrate [judge] has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." Wheeler v. City of Searcy, 14 F.4th 843, 852 (8th Cir. 2021) (citation omitted). Carter does not argue that the warrant for his arrest was invalid on its face; instead, he claims that Ludwick and Kious "omitted" information from the affidavit in support of the arrest warrant that "was material and critical to [the] probable cause determination[]." See Appellant Br. 28. Thus, to make out a constitutional violation under the Fourth Amendment, Carter argues that the affidavit deliberately and recklessly omitted statements sufficient to undermine the warrant and negate the district court's finding that arguable probable cause existed to arrest him. See United States v. Gater, 868 F.3d 657, 659 (8th Cir. 2017) (stating the requirements to successfully undermine a warrant).

"[T]he fact that a neutral magistrate [judge] has issued a warrant . . . does not end the inquiry into objective reasonableness." Wheeler, 14 F.4th at 852 (quoting Messerschmidt v. Millender, 565 U.S. 535, 547 (2012)). Thus, when an "affiant recklessly or knowingly place[s] false information in the affidavit that misle[a]d[s] the issuing judge," id. at 852 (citation omitted), the officer has "no reasonable grounds for believing that the warrant was properly issued" and lacks probable cause for the arrest, United States v. Leon, 468 U.S. 897, 923 (1984). Officers, however, are not required to "conduct a 'mini-trial' before making an arrest." Kuehl v. Burtis, 173 F.3d 646, 650 (8th Cir. 1999) (citation omitted). Therefore,

-7-

"'[o]missions . . . can vitiate a warrant if [the aggrieved party] proves' two things." Wheeler, 14 F.4th at 853 (second and third alterations in original) (citation omitted). "[F]irst[,] that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading, and, second, that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause." United States v. Allen, 297 F.3d 790, 795 (8th Cir. 2002). Recklessness may only "be inferred from the fact of omission of information from an affidavit . . . when the material omitted would have been clearly critical to the finding of probable cause." United States v. Ozar, 50 F.3d 1440, 1445 (8th Cir. 1995) (citation omitted).

> The affidavit in support of the warrant application provided the following:
>
> During the investigation it was discovered that [Carter] provided information to law enforcement incriminating himself. [Carter] gave multiple inconsistent statements regarding his involvement during the course of the investigation. Additionally evidence provides that: (1) there was a staged burglary at the home of the victim at the time of the murder (2) [Carter] testified under oath that he has never touched evidence at the crime scene and evidence later established that [Carter]'s latent prints were found on the evidence (3) [Carter] had knowledge of the crime that no one other than a person present at the time of the crime could have known (4) [Carter] withheld vital information from initial interviews with law enforcement.

Like he did before the district court, Carter engages in a piecemeal analysis of probable cause on appeal, offering alternative theories to discredit each statement in the warrant affidavit individually. He argues that the "inconsistent statements" had no "factual support in the warrant affidavit"; that the "staged burglary" was "a disputed theory" of the case; that his fingerprints were found "in areas not indicative of criminal activity"; that his knowledge of the crime was consistent with his father's, who should have been arrested as well; and that his failure to "volunteer"

such "vital information" is too vague to support probable cause.  Appellant Br. 25-27.

As Carter acknowledges, the Fourth Amendment requires analysis of the totality of the circumstances, and, as the Supreme Court has reiterated, the totality-of-the-circumstances approach "precludes this sort of divide-and-conquer analysis."  See United States v. Arvizu, 534 U.S. 266, 274 (2002); cf. Barnes v. Felix, 145 S. Ct. 1353, 1358-59 (2025) (noting that a court must "'slosh [its] way through' a 'factbound morass'" and analyze "all of th[e] events" comprising the totality of the circumstances (first alteration in original) (citation omitted)).  Under the totality of the circumstances, Carter was inconsistent with police officers and had inside knowledge about the crime.  These facts taken together are sufficient to support a finding of probable cause.[6]  See United States v. Ameling, 328 F.3d 443, 449 (8th Cir. 2003) (holding that "false statements and inconsistent stories" "[c]ombined with . . . facts justifying the initial stop" created probable cause).  Carter also does not point to any *materially false* facts or omissions that would negate the finding of probable cause.  Without such facts or omissions, this Court cannot infer a reckless disregard for the truth.  United States v. Randle, 39 F.4th 533, 537-38 (8th Cir. 2022) ("[R]eckless disregard for the truth may be inferred . . . only when the material omitted would have been clearly critical to the finding of probable cause." (second alteration in original) (citation omitted)).  Carter has not carried his

---

[6]Given the peculiar facts of this case, it is important to note that the warrant was issued just days after the jury found Carter civilly liable for the wrongful death of Shirley under the preponderance of the evidence standard.  Carter, 957 N.W.2d at 631.  This fact alone negates Carter's argument that Ludwick and Kious lacked even *arguable* probable cause to arrest him for Shirley's death, as the preponderance of the evidence standard carries a higher burden of proof than that of arguable and classic probable cause.  See Brown v. City of St. Louis, 40 F.4th 895, 900 (8th Cir. 2022) (noting that "[t]here is 'no place' in [the probable cause] analysis for '[f]inely tuned standards such as proof . . . by a preponderance of the evidence'" because police officers are given "substantial latitude" when determining whether probable cause exists (third alteration in original) (citations omitted)).

burden to plead a constitutional violation. Thus, the district court properly held that Ludwick and Kious are entitled to qualified immunity on Carter's false arrest claim.

B.

Carter next claims that that Ludwick and Kious "knowingly and intentionally concealed critical exculpatory evidence" from him throughout the litigation of the civil suit. He argues that once Ludwick and Kious responded to a subpoena from the Civil Plaintiffs in the wrongful-death suit, they "were obligated to provide [him] with the same benefits . . . and to disclose all exculpatory evidence." Appellant Br. 38. Their failure, according to Carter, results in a constitutional violation sufficient to overcome qualified immunity.

Carter's argument does not survive the clearly established prong of the qualified immunity analysis. While he attempts to couch his claim as one sounding in substantive due process, Carter really brings a procedural due process claim under Brady v. Maryland, 373 U.S. 83, 86 (1963). See R. Doc. 30, at 66 (alleging that the defendants "knowingly and intentionally concealed critical exculpatory evidence *to which Carter was entitled* under . . . the Fourteenth Amendment" (emphasis added)). Carter acknowledges that Brady does not extend to civil cases, so there was no constitutional violation based on Ludwick and Kious's alleged failure to supply Carter with reciprocal discovery as they had no duty to do so. To escape this conclusion, Carter contends that his concealment-of-evidence claim sounds in substantive due process, but this argument does not satisfy the clearly established prong of our analysis. Carter cites no case remotely analogous to the facts here; recognizing this deficiency, Carter makes a blanket statement that "a violation of clearly established law can come from the application of a general constitutional rule that applies with 'obvious clarity.'" See Appellant Br. 44 (citing Hovick v. Patterson, 37 F.4th 511, 517 (8th Cir. 2022)). While Carter correctly recites this rule, this "is not the rare case" in which such a constitutional rule obviously applies. See Hovick, 37 F.4th at 520 (citation omitted). The district court did not err in

dismissing Carter's concealment-of-evidence claim on the basis of qualified immunity.

## C.

Finally, Carter challenges the dismissal of his failure-to-investigate claim on the basis of qualified immunity. He asserts that Ludwick and Kious's deficient investigation shocks the conscience, creating a substantive due process violation under the Fourteenth Amendment.

To establish a substantive due process violation for failure to investigate, Carter "must show that each individual defendant 'intentionally or recklessly failed to investigate, thereby shocking the conscience.'" See Johnson v. Moody, 903 F.3d 766, 773 (8th Cir. 2018) (citation omitted). This Court has held that "(1) evidence that the state actor attempted to coerce or threaten the defendant, (2) evidence that investigators purposefully ignored evidence suggesting the defendant's innocence, [and] (3) evidence of systematic pressure to implicate the defendant in the face of contrary evidence" constitutes a conscience-shocking, reckless, or intentional failure to investigate. Akins v. Epperly, 588 F.3d 1178, 1184 (8th Cir. 2009). However, "[a]n officer's negligent failure to investigate inconsistencies or other leads is insufficient to establish conscience-shocking misconduct." Id.

Carter did not plausibly plead a due process violation, failing the first prong of the qualified immunity analysis. The district court properly found that, at best, Carter's complaint alleged a negligent investigation, not a conscience-shocking failure triggering a due process violation. The complaint details over 15 possible leads on suspects that were rumored to be involved in Shirley's murder, some of which were not pursued due to credibility determinations. Carter's complaint also acknowledges that Ludwick and Kious received a "myriad" of leads, arguing instead that these leads were "superficially" pursued. But, as this Court has stated, "faced with conflicting information, investigators sometimes have no choice but to 'discount[]' witness statements that 'do not fit with the evidence [found] at the scene

of the crime.'"  Engesser v. Fox, 993 F.3d 626, 630 (8th Cir. 2021) (alterations in original) (citation omitted).  Even construing the allegations in Carter's favor and accepting their veracity, at most, Carter has alleged "shoddy police work" that "reflects nothing more than negligent or grossly negligent conduct."  Id.  Without more, Carter fails to plausibly plead a substantive due process violation.  The district court did not err in dismissing Carter's failure to investigate claim on the basis of qualified immunity.

## III.

Carter next argues that the district court exceeded the scope of the remand order in dismissing his malicious prosecution and abuse of process claims on the merits because the remand order limited the district court to reconsideration of only the qualified immunity issue.  We normally "review de novo whether the district court exceeded the scope of our remand order."  United States v. Hunt, 812 F. App'x 390, 392 (8th Cir. 2020) (per curiam).  However, the scope of remand is irrelevant to our analysis because the Defendants filed a joint motion to reconsider the ruling on the motion to dismiss all claims after we remanded this case to the district court.  "A district court has wide discretion over whether to grant a motion for reconsideration," and Carter does not challenge the district court's decision to do so here.  See SPV-LS, LLC v. Transamerica Life Ins. Co., 912 F.3d 1106, 1111 (8th Cir. 2019).  "[B]y failing to assert grounds for reversal of th[is] order[] in his brief[], [Carter] is deemed to have waived th[is] issue[] on appeal."  Harris v. Folk Const. Co., 138 F.3d 365, 366 n.1 (8th Cir. 1998).

## IV.

In the alternative, Carter argues that the district court erred in dismissing his state law claims on the merits.  We review the dismissal of Carter's state-law claims of malicious prosecution and abuse of process de novo.  See Cockram v. Genesco, Inc., 680 F.3d 1046, 1056 (8th Cir. 2012).

The district court did not err in dismissing Carter's malicious prosecution claim against Kious. To prevail on a malicious prosecution claim under Iowa law, Carter must prove: "(1) a previous prosecution, (2) instigation of that prosecution by the defendant, (3) termination of that prosecution by acquittal or discharge of the plaintiff, (4) want of probable cause, (5) malice on the part of defendant for bringing the prosecution, and (6) damage to plaintiff." Wilson v. Hayes, 464 N.W.2d 250, 259 (Iowa 1990) (en banc) (citation omitted). Most relevant here is the element of "want of probable cause" for the prosecution. See id. In this case, "a state court judge determined there was probable cause to issue [Carter]'s arrest warrant," see Stockley v. Joyce, 963 F.3d 809, 822 (8th Cir. 2020), and Carter failed to plead any materially false facts or omissions that would negate the finding of probable cause, see supra Section II.A. Thus, Carter cannot maintain his malicious prosecution claim as a matter of law, and the district court did not err on this basis.

Likewise, the district court did not err in dismissing the abuse of process claim against Kious. To plausibly plead an abuse-of-process claim, Carter must show "(1) use of the legal process, (2) in an improper or unauthorized manner, and (3) that damages were sustained as a result of the abuse." Stew-Mc Dev., Inc. v. Fischer, 770 N.W.2d 839, 849 (Iowa 2009). Importantly, "[t]here is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." Wilson, 464 N.W.2d at 267 (quoting Restatement (Second) of Torts § 682 cmt. b (Am. L. Inst. 1977)). Thus, "as long as the act that is alleged to be improper, is in fact proper in the regular prosecution of the proceeding," id., a plaintiff may not pursue an abuse of process claim under Iowa law.

Carter alleged that Kious worked with the civil plaintiffs "with the goal of obtaining a civil judgment against [him]." R. Doc. 30, at 64. As the district court stated, "[a] judgment is the main purpose of a civil proceeding." R. Doc. 118, at 68. While Carter also alleges that one of the goals of obtaining this judgment was "leveraging the civil judgment into criminal charges," R. Doc. 30, at 64, this

-13-

"incidental motive" does not render Kious liable for abuse of process, <u>see</u> <u>Wilson</u>, 464 N.W.2d at 267. We discern no error by the district court.

V.

For the foregoing reasons, we affirm the judgment of the district court.

_____