******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# JAMES MCKINNON *v.* MR. GARDNER CORRECTION OFFICER ET AL.
## (AC 47981)

Elgo, Clark and Westbrook, Js.

*Syllabus*

The plaintiff appealed from the trial court's judgment dismissing his civil action brought against the defendants, six employees of the Department of Correction, in both their individual and official capacities, pursuant to federal statute (42 U.S.C. § 1983). The plaintiff claimed that the court improperly dismissed his action for lack of personal jurisdiction. *Held*:

The trial court improperly granted the defendants' motion to dismiss for lack of personal jurisdiction, as it was undisputed that the plaintiff complied with the service of process requirements in the relevant statutes (§§ 52-57 (a) and 52-64 (b)).

This court concluded that the doctrine of sovereign immunity deprived the trial court of subject matter jurisdiction over the plaintiff's claims against the defendants in their official capacities, and, therefore, the trial court's dismissal of the plaintiff's action in that regard was not improper.

This court declined to address the merits of the defendants' alternative ground of affirmance with respect to the doctrine of qualified immunity, as a motion to dismiss was not the proper procedural vehicle to raise the qualified immunity defense in response to claims brought pursuant to § 1983, and the trial court did not rule on the defendants' contention that the plaintiff's claims were barred by the qualified immunity defense.

Argued November 20, 2025—officially released April 28, 2026

*Procedural History*

Action to recover damages for alleged violations of the plaintiff's civil rights, and for other relief, brought to the Superior Court in the judicial district of New London, where the court, *Spallone, J.*, granted the defendants' motion to dismiss and rendered judgment thereon, from which the plaintiff appealed to this court. *Reversed in part*; *further proceedings*.

*James McKinnon*, self-represented, the appellant (plaintiff).

*Evan O'Roark*, deputy solicitor general, with whom, on the brief, was *William Tong*, attorney general, for the appellees (defendants).

*Opinion*

ELGO, J. The self-represented plaintiff, James McKinnon, appeals from the judgment of the trial court granting the motion to dismiss filed by the defendants, six employees of the Department of Correction (department).[1] On appeal, the plaintiff claims that the court improperly dismissed his civil action for lack of personal jurisdiction. In response, the defendants contend, as an alternate ground of affirmance, that the dismissal of the plaintiff's action was proper because the plaintiff's claims are barred by the doctrines of sovereign and qualified immunity, which they argue deprived the court of subject matter jurisdiction. We reverse in part the judgment of the trial court.

At all relevant times, the plaintiff was an inmate at the Corrigan Correctional Center. In April, 2023, he commenced this action pursuant to 42 U.S.C. § 1983. In his September 7, 2023 operative amended complaint, the plaintiff alleged that the defendants, in both their individual and official capacities, violated his due process rights and his eighth amendment right to be free from cruel and unusual punishment when moving him to a new cell on December 30, 2021. More specifically, he alleged that the five correctional officer defendants; see footnote 1 of this opinion; deviated from department policy by placing him in handcuffs and escorting him to a new cell "without a supervisor being made aware" and "without a camcorder." The plaintiff also alleged that the mental health worker defendant deviated from department policy by failing to place him in mental health housing despite his complaint that he "wasn't feeling well." In addition, the plaintiff alleged that the defendants did not conduct themselves "in a responsible

---

[1] In his complaint, the plaintiff named as defendants five department correctional officers, identified as "Mr. Gardner," "Mr. Jimenez," "Mr. Spring," "Mr. Nichols," and "Mr. Speight," and one department mental health worker, identified as "Ms. Monica."

respectful manner," that the use of handcuffs "cause[d] pain and [swelling]," and that he thereafter was unable to "straighte[n] out [his] fingers." In his prayer for relief, the plaintiff requested more than $3 million in compensatory damages and $120,000 in punitive damages.

The record before us indicates that the plaintiff commenced this action against the defendants by service of process on April 18, 2023. The return of service prepared by State Marshal Courtland Hall indicates that Hall "made due and legal service" on all six defendants on that date "by leaving a true and attested copy of the original Writ, Summons, and Complaint at the office of William Tong, Connecticut Attorney General, at least twelve days before the session of the Court to which this writ is returnable." In that filing, Hall also stated that the attorney general was "the duly authorized agent" for the defendants. In the months that followed, no appearance was filed on behalf of the defendants.[2]

The plaintiff thereafter filed an amended complaint, which he served directly on the defendants.[3] The record contains a return of service prepared by Hall and dated August 30, 2023, which was filed with the court on September 7, 2023. In that return of service, Hall averred that he "left a true and attested copy" of the plaintiff's writ, summons, and amended complaint "with and in the hands" of all six defendants.[4]

On October 27, 2023, the plaintiff filed a motion for a default judgment due to the defendants' failure to

---

[2] In light of the defendants' failure to appear, the plaintiff filed two motions for default, on July 17 and September 18, 2023, which the court denied.

[3] At oral argument before the trial court, the plaintiff explained that, having already served the defendants in their official capacities in April, 2023, he served his amended complaint on the defendants in their individual capacities in August, 2023, to ensure that they "were served in both capacities . . . ."

[4] On appeal, the defendants concede that they "waived any objection" to the propriety of the plaintiff's August 30, 2023 service of process on them in their individual capacities pursuant to General Statutes § 52-57 (a). See generally *Harnage* v. *Lightner*, 328 Conn. 248, 252–54, 179 A.3d 212 (2018) (plaintiff who sues state defendant in individual

appear. In that motion, the plaintiff noted that he had commenced this action in April, 2023, and that "more than 150 days have elapsed since the date on which the defendants herein were served . . . ." The court granted that motion by order dated November 9, 2023.

On November 13, 2023, the Office of the Attorney General filed an appearance on behalf of the defendants. Two weeks later, the defendants filed a motion to dismiss the plaintiff's action for lack of personal jurisdiction. In the accompanying memorandum of law, the defendants alleged that the plaintiff had failed to "properly serve the Attorney General's Office as required by General Statutes § 52-64." The defendants thus asked the court to dismiss the plaintiff's action "in its entirety" because the court "lacks personal jurisdiction." The plaintiff filed an objection to the defendants' motion to dismiss, to which he appended as exhibits copies of the April 18 and August 30, 2023 returns of service.

The court heard argument from the parties on the motion on February 23, 2024. By order dated June 10, 2024, the court granted the defendants' motion to dismiss due to the plaintiff's "failure to serve process on the attorney general . . . ." In that order, the court made no factual findings other than stating: "The plaintiff failed to effect proper service as required by law, therefore depriving the court of personal jurisdiction over the defendants." The court thus rendered a judgment of dismissal, and this appeal followed.

I

On appeal, the plaintiff claims that the court improperly granted the defendants' motion to dismiss for lack of personal jurisdiction. We agree.

It is well established that "[t]he Superior Court has no authority to render a judgment against a person who was not properly served with process. . . . The issue of whether a court has jurisdiction presents a question of

and official capacities is obligated to comply with service of process requirements of both General Statutes §§ 52-57 and 52-64).

law. . . . Our review of the court's legal conclusion is, therefore, plenary. . . .

"[T]he Superior Court . . . may exercise jurisdiction over a person only if that person has been properly served with process, has consented to the jurisdiction of the court or has waived any objection to the court's exercise of personal jurisdiction. . . . [S]ervice of process on a party in accordance with the statutory requirements is a prerequisite to a court's exercise of [personal] jurisdiction over that party. . . . Therefore, [p]roper service of process is not some mere technicality. . . .

"[W]hen a particular method of serving process is set forth by statute, that method must be followed. . . . Unless service of process is made as the statute prescribes, the court to which it is returnable does not acquire jurisdiction. . . . [A]n action commenced by such improper service must be dismissed." (Citations omitted; internal quotation marks omitted.) *Mosby* v. *Board of Education*, 191 Conn. App. 280, 284, 214 A.3d 400 (2019), cert. denied, 335 Conn. 939, 237 A.3d 1 (2020).

Section 52-64 (b) prescribes the manner in which service of process shall be effectuated in actions by incarcerated individuals against state employees in their official capacities. It provides: "In any civil action commenced by a person who is incarcerated against the state or any institution, board, commission, department or administrative tribunal thereof, or against any officer, servant, agent or employee of the state or of any such institution, board, commission, department or administrative tribunal, as the case may be, service of process on all defendants in such civil action, who are sued in their official capacity, shall be accomplished by a proper officer (1) leaving one true and attested copy of the process, including the declaration or complaint, with the Attorney General at the office of the Attorney General in Hartford, or (2) sending one true and attested copy of the process, including the summons and complaint, by certified mail, return receipt requested, to the Attorney General at the office

of the Attorney General in Hartford." General Statutes § 52-64 (b).

The record before us unequivocally indicates that the plaintiff complied with that statutory requirement when he commenced this action against the defendants in April, 2023. The return of service filed with the court specifically states that Hall "made due and legal service" on all six defendants on that date "by leaving a true and attested copy" of the writ, summons, and complaint at the Office of the Attorney General. For that reason, the defendants on appeal concede that they "mistakenly argued the court lacked personal jurisdiction over them in their official capacities . . . ." The defendants further concede that the trial court's decision to grant their motion to dismiss on that basis was erroneous.[5]

Because it is undisputed that the plaintiff complied with the service of process requirements of both General Statutes §§ 52-57 (a) and 52-64 (b), we conclude that the court improperly determined that it lacked personal jurisdiction over the defendants.

II

Although the defendants agree that the court improperly concluded that it lacked personal jurisdiction, they submit, as an alternate ground of affirmance, that the dismissal of the plaintiff's action in its entirety was proper because the plaintiff's claims are barred by the doctrines of sovereign and qualified immunity, which allegedly deprived the court of subject matter jurisdiction.[6] We address each doctrine in turn.

---

[5] In their appellate brief, the defendants state in relevant part: "The trial court dismissed this case in its entirety for lack of proper service. Upon further review, the defendants now concede that the plaintiff properly served them in their official capacities. [They] also concede that they waived any objection to individual capacity service by failing to raise it below. So, the trial court should not have dismissed on service grounds."

[6] The defendants raised that issue in a separate motion to dismiss filed on December 28, 2023, in which they asked the court to dismiss the plaintiff's action "in its entirety" due to a lack of subject matter jurisdiction. The plaintiff filed an objection to that motion to dismiss

A

We first consider the doctrine of sovereign immunity. Our courts "have long recognized the validity of the common-law principle that the state cannot be sued without its consent . . . . A sovereign is exempt from suit, not because of any formal conception or obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends." (Citations omitted; internal quotation marks omitted.) *Horton* v. *Meskill,* 172 Conn. 615, 623, 376 A.2d 359 (1977). Rooted in the recognition that subjecting "state and federal governments to private litigation might constitute a serious interference with the performance of their functions and with their control over their respective instrumentalities, funds and property," the doctrine of sovereign immunity shields the state "from unconsented to litigation, as well as unconsented to liability." (Internal quotation marks omitted.) *Rocky Hill* v. *SecureCare Realty, LLC*, 315 Conn. 265, 282, 105 A.3d 857 (2015).

As our Supreme Court has explained, "[t]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss."[7] (Internal quotation marks omitted.) *Marland* v. *University of Connecticut Health Center*, 350 Conn. 830, 835, 326 A.3d 1096 (2024). "A determination regarding a trial court's subject matter jurisdiction is a question of law." (Internal quotation marks omitted.)

on February 5, 2024. The record indicates that the trial court never ruled on that motion to dismiss. Following the commencement of this appeal, the defendants filed a motion to open and vacate the judgment granting their motion to dismiss for lack of personal jurisdiction and asked the court to "address [their] motion to dismiss for lack of subject matter jurisdiction." The court denied that motion.

[7] Because sovereign immunity implicates the subject matter jurisdiction of the court, it may be raised at any time. See, e.g., *Lewis* v. *Gaming Policy Board*, 224 Conn. 693, 698, 620 A.2d 780 (1993) ("[i]t is a fundamental rule that a court may raise and review the issue of subject matter jurisdiction at any time").

*Machado* v. *Taylor*, 326 Conn. 396, 403, 163 A.3d 558 (2017). Accordingly, our review is plenary. Id.

In the present case, the plaintiff brought an action for money damages against the defendants under 42 U.S.C. § 1983. The doctrine of sovereign immunity generally bars all claims brought against state officials in their official capacities pursuant to § 1983. See *Miller* v. *Egan*, 265 Conn. 301, 311, 828 A.2d 549 (2003) (explaining that "[a] state, as an entity having immunity under the eleventh amendment to the United States constitution, is not a 'person' within the meaning of § 1983 and thus is 'not subject to suit under § 1983 in either federal court or state court'" and noting that "[t]his rule also extends to state officers sued in their official capacities"). Although three exceptions to sovereign immunity exist; see *Columbia Air Services*, *Inc*. v. *Dept. of Transportation*, 293 Conn. 342, 349–50, 977 A.2d 636 (2009); the plaintiff has not invoked any of those exceptions. Moreover, none applies in the present case—the allegations contained in the plaintiff's complaint do not clearly fall within a statutory waiver of sovereign immunity and the plaintiff seeks only monetary damages, not declaratory or injunctive relief.

"In the absence of a statutory waiver of sovereign immunity, the plaintiff may not bring an action against the state for monetary damages without authorization from the claims commissioner to do so." Id., 351. The complaint in the present case contains no allegation that the plaintiff obtained permission from the claims commissioner to institute the action for monetary relief; see General Statutes § 4-160; and there is no such indication in the record before us. In light of the foregoing, we conclude that the doctrine of sovereign immunity deprived the trial court of subject matter jurisdiction over the plaintiff's claims against the defendants in their official capacities. The court's dismissal of the plaintiff's action in that regard, therefore, was not improper.[8]

[8] As this court has observed, "[w]e may affirm a trial court's decision that reaches the right result, albeit for the wrong reason." *State* v.

## B

In their December 28, 2023 motion to dismiss for lack of subject matter jurisdiction, the defendants also argued that the plaintiff's claims against them in their individual capacities were barred by the doctrine of qualified immunity. On appeal, the defendants renew that challenge as an alternate ground of affirmance and ask us to affirm the judgment of dismissal as to those claims.[9] We decline that invitation.

The doctrine of qualified immunity, in the context of claims brought pursuant to § 1983, is a matter of federal law. See *Martinez* v. *California*, 444 U.S. 277, 284 n.8, 100 S. Ct. 553, 62 L. Ed. 2d 481 (1980); *Wood* v. *Strickland*, 420 U.S. 308, 315–22, 95 S. Ct. 992, 43 L. Ed. 2d 214 (1975); *Scheuer* v. *Rhodes*, 416 U.S. 232, 238–49, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974); see also *Mawhirt* v. *Ahmed*, 8 Fed. Appx. 125, 127 (2d Cir. 2001) (discussing "the federal law doctrine of qualified immunity" to § 1983 claims), cert. denied, 534 U.S. 1080, 122 S. Ct. 810, 151 L. Ed. 2d 695 (2002). That qualified immunity "protects government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[10] (Internal quotation marks omitted.) *Mulligan* v. *Rioux*, 229 Conn. 716, 728, 643 A.2d 1226 (1994). "[A] claim for qualified immunity from liability

*Albert,* 50 Conn. App. 715, 728, 719 A.2d 1183 (1998), aff'd, 252 Conn. 795, 750 A.2d 1037 (2000).

[9] In so doing, the defendants in their appellate brief acknowledge that "[a] motion to dismiss . . . properly attacks the jurisdiction of the court . . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." (Internal quotation marks omitted.) *Wilcox* v. *Webster Ins., Inc.*, 294 Conn. 206, 213, 982 A.2d 1053 (2009).

[10] As our Supreme Court has explained, the qualified immunity that protects public officials under the common law of this state "is distinct" from that which protects public officials from claims brought pursuant to § 1983. *Mulligan* v. *Rioux*, 229 Conn. 716, 728, 643 A.2d 1226 (1994). The present case does not involve any common-law claims, but rather only ones brought pursuant to § 1983.

for damages under § 1983 raises a question of federal law . . . and not state law. Therefore, in reviewing . . . claims of qualified immunity [Connecticut courts] are bound by federal precedent, and may not expand or contract the contours of the immunity available to government officials." **(Citation omitted; internal quotation marks omitted.)** *Schnabel* v. *Tyler*, 230 Conn. 735, 742–43, 646 A.2d 152 **(1994).**

Under federal law, qualified immunity operates as a defense to a § 1983 claim. See *Harlow* v. *Fitzgerald*, 457 U.S. 800, 815, 102 S. Ct. 2727, 73 L. Ed. 2d 396 **(1982)** (qualified immunity "is an affirmative defense that must be pleaded by a defendant official"); *Gomez* v. *Toledo,* 446 U.S. 635, 640, 100 S. Ct. 1920, 64 L. Ed. 2d 572 **(1980)** ("qualified immunity is a defense" to § 1983 action that must be pleaded); *Sebesta* v. *Davis*, 878 F.3d 226, 233 (7th Cir. 2017) (qualified immunity "is an affirmative defense for pleading purposes"); *Askins* v. *Doe No. 1*, 727 F.3d 248, 254 (2d Cir. 2013) ("[q]ualified immunity is a defense available . . . to individuals sued in their individual capacity" pursuant to § 1983); *McKenna* v. *Wright*, 386 F.3d 432, 435 (2d Cir. 2004) ("[q]ualified immunity is an affirmative defense" that "is normally asserted in an answer"). The appellate courts of this state have long recognized that bedrock precept. See *Ham* v. *Greene*, 248 Conn. 508, 523, 729 A.2d 740 **(**setting forth party's burden "to prevail as a matter of law on the special defense of qualified immunity"), cert. denied, 528 U.S. 929, 120 S. Ct. 326, 145 L. Ed. 2d 254 **(1999)**; *Schnabel* v. *Tyler*, supra, 230 Conn. 742 **(**explaining that qualified immunity is "a defense to civil suits brought pursuant to § 1983" and referencing "the qualified immunity defense" throughout opinion); see also *Sullins* v. *Rodriguez*, 281 Conn. 128, 131 nn.4 and 5, 913 A.2d 415 **(2007)** (defendants pleaded special defense of qualified immunity in answer to complaint); *Mulligan* v. *Rioux*, supra, 229 Conn. 723 **(**same); *Campbell* v. *Porter*, 212 Conn. App. 377, 391, 275 A.3d 684 **(2022)** (same); *Outlaw* v. *Meriden*, 43 Conn. App. 387,

389, 682 A.2d 1112 (same), cert. denied, 239 Conn. 946, 686 A.2d 122 (1996).

In the present case, the defendants did not plead qualified immunity as a special defense. Rather, they averred, in their December 28, 2023 motion to dismiss, that the plaintiff's "claims must be dismissed based on a lack of subject matter jurisdiction." In their accompanying memorandum of law, they argued, inter alia, that the plaintiff's claims for monetary damages pursuant to § 1983 were barred by the doctrine of qualified immunity. Accordingly, the defendants maintained that "the plaintiff's action should be dismissed in its entirety."

It is well established that a motion to dismiss "properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." (Internal quotation marks omitted.) *Spillane* v. *Lamont*, 350 Conn. 119, 125, 323 A.3d 1007 (2024). "Subject matter jurisdiction does not rest on the viability of the claims that a court is asked to adjudicate. . . . Subject matter jurisdiction involves the authority of a court to adjudicate the *type* of controversy presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Once it is determined that a [court] has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action. . . . It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Dept. of Public Health* v. *Estrada*, 349 Conn. 223, 236–37, 315 A.3d 1081 (2024).

As our Supreme Court has explained, "[a] motion to dismiss is the appropriate vehicle for challenging the jurisdiction of the court." *Zizka* v. *Water Pollution*

*Control Authority*, 195 Conn. 682, 687, 490 A.2d 509 (1985). Under our rules of practice, a motion to dismiss properly is used to assert "(1) lack of jurisdiction over the subject matter; (2) lack of jurisdiction over the person; (3) insufficiency of process; and (4) insufficiency of service of process." Practice Book § 10-30 (a). The "qualified immunity defense" to a § 1983 action; *Schnabel* v. *Tyler*, supra, 230 Conn. 748; is not among the grounds enumerated therein. Accordingly, the relevant question is whether that defense implicates the subject matter jurisdiction of the court. Cf. *Marland* v. *University of Connecticut Health Center*, supra, 350 Conn. 835 (doctrine of sovereign immunity implicates subject matter jurisdiction and thus is proper basis for motion to dismiss).

Federal courts that have addressed the issue have universally rejected the proposition that the doctrine of qualified immunity is subject matter jurisdictional in nature. See, e.g., *Nevada* v. *Hicks*, 533 U.S. 353, 373, 121 S. Ct. 2304, 150 L. Ed. 2d 398 (2001) ("[t]here is no authority whatever for the proposition that . . . qualified-immunity defenses pertain to the court's jurisdiction"); *Neal* v. *Davis*, 475 Fed. Appx. 690, 692 (10th Cir. 2012) ("qualified immunity is a defense [to a § 1983 claim] on the merits, not a jurisdictional bar"). As the United States Court of Appeals for the Sixth Circuit observed in the context of a § 1983 claim, qualified immunity "is an affirmative defense which must be affirmatively pleaded; it is not a doctrine of jurisdictional nature that deprives a court of the power to adjudicate a claim. . . . Since [qualified] immunity must be affirmatively pleaded, it follows that failure to do so can work a waiver of the defense." (Citations omitted.) *Kennedy* v. *Cleveland*, 797 F.2d 297, 300 (6th Cir. 1986), cert. denied sub nom. *Hanton* v. *Kennedy*, 479 U.S. 1103, 107 S. Ct. 1334, 94 L. Ed. 2d 185 (1987); accord *S.A.A.* v. *Geisler*, 127 F.4th 1133, 1140 n.9 (8th Cir. 2025) (qualified immunity is affirmative defense that is waived if not pleaded by defendant); *Lawless* v. *Freetown*, 63 F.4th 61, 65 (1st Cir. 2023) (qualified immunity is affirmative defense

that "can be waived or . . . forfeited"); *Sharp* v. *Johnson*, 669 F.3d 144, 158 (3rd Cir.) ("[q]ualified immunity is an affirmative defense and generally must be included in a responsive pleading or may be considered waived"), cert. denied, 567 U.S. 937, 133 S. Ct. 41, 183 L. Ed. 2d 680 (2012); *Suarez Corp. Industries* v. *McGraw*, 202 F.3d 676, 684 n.12 (4th Cir. 2000) ("unlike a claim of qualified immunity, [e]leventh [a]mendment immunity is jurisdictional in nature"); *Dudley* v. *Singleton*, 508 F. Supp. 3d 1118, 1126 n.1 (N.D. Ala. 2020) ("qualified immunity is not a jurisdictional issue"); *Komutanon* v. *Coler*, 702 F. Supp. 1406, 1408 (N.D. Ill. 1988) (qualified immunity "is not a jurisdictional bar, but rather an affirmative defense").

In echoing a similar sentiment, the United States Court of Appeals for the Second Circuit expressly contrasted qualified immunity from § 1983 claims with subject matter jurisdictional ones.  As it stated: "Because qualified immunity, unlike subject matter jurisdiction, is an affirmative defense that can be waived, we decline to extend the collateral order doctrine to allow immediate appeal from an order denying as untimely a motion asserting that defense. . . . [S]uch an expansion is unwarranted, since it would essentially grant defendants the right to assert a qualified immunity defense at any time . . . as though the affirmative defense were the equivalent of a challenge to subject matter jurisdiction."  (Citations omitted.)  *Maye* v. *New Haven*, 89 F.4th 403, 407–408 (2d Cir. 2023); see also *McKenna* v. *Wright*, supra, 386 F.3d 435 ("[q]ualified immunity is an affirmative defense" that "is normally asserted in an answer"); *McCardle* v. *Haddad*, 131 F.3d 43, 51 (2d Cir. 1997) ("[t]he qualified immunity defense can be waived, either by failure to raise it in a timely fashion . . . or by failure to raise it with sufficient particularity" (citations omitted)).  The Second Circuit, whose precedent is entitled to "special consideration" on this issue; see *Schnabel* v. *Tyler*, supra, 230 Conn. 743; plainly is of the view

that qualified immunity from § 1983 actions does not implicate the subject matter jurisdiction of the court.

The United States District Court for the District of Connecticut, too, has rejected a claim that the qualified immunity defense implicates the subject matter jurisdiction of the court. As that court noted: "The existence vel non of subject matter jurisdiction presents a fundamental issue; if subject matter jurisdiction is absent, no proceedings can take place in the district court. A qualified immunity defense [to a § 1983 action] has nothing to do with that. Accordingly, there is no substance to the . . . contention that the [c]ourt may lack subject-matter jurisdiction in this action due to the [defendant's] 'qualified immunity defense.'" *Mercer* v. *Schriro*, 337 F. Supp. 3d 109, 125 (D. Conn. 2018).

As countless federal courts have observed, "[q]ualified immunity is an affirmative defense that may be waived." *Bogle* v. *McClure*, 332 F.3d 1347, 1355 n.5 (11th Cir. 2003), cert. dismissed, 540 U.S. 1158, 124 S. Ct. 1168, 157 L. Ed. 2d 1059 (2004); see also *Harlow* v. *Fitzgerald*, supra, 457 U.S. 815 (qualified immunity "is an affirmative defense that must be pleaded by a defendant official"). Connecticut law similarly provides that special defenses and affirmative defenses are deemed waived if not pleaded by a defendant. See, e.g., *Wilcox* v. *Webster Ins., Inc.*, 294 Conn. 206, 222, 982 A.2d 1053 (2009) ("[c]ollateral estoppel is an affirmative defense that may be waived if not properly pleaded"); *Stokes* v. *Norwich Taxi, LLC*, 289 Conn. 465, 488, 958 A.2d 1195 (2008) ("the defendants waived the special defense of federal preemption by failing to plead it"); *State* v. *Littlejohn*, 199 Conn. 631, 640, 508 A.2d 1376 (1986) ("[the] better reasoned approach is not to treat the statute of limitations as jurisdictional and hence nonwaivable but as an affirmative defense and hence waivable"); *Oakland Heights Mobile Park, Inc.* v. *Simon*, 36 Conn. App. 432, 436, 651 A.2d 281 (1994) (defendant's "failure to assert" special defense in pleadings "constituted a waiver of that defense"); *Fuller* v. *Planning & Zoning Commission*, 21

Conn. App. 340, 346, 573 A.2d 1222 (1990) ("[l]ack of capacity to maintain an action must be raised by way of special defense and in a timely manner or will be deemed to be waived"). Accordingly, we concur with the great weight of federal authority holding that the qualified immunity defense to a § 1983 action, like other special defenses, may be waived if not properly pleaded.

Subject matter jurisdiction, by contrast, can never be waived. That is a fundamental precept of both federal and Connecticut law. See *Gonzalez* v. *Thaler,* 565 U.S. 134, 141, 132 S. Ct. 641, 181 L. Ed. 2d 619 (2012) ("[s]ubject-matter jurisdiction can never be waived or forfeited"); *Fairfield Merrittview Ltd. Partnership* v. *Norwalk*, 320 Conn. 535, 548, 133 A.3d 140 (2016) ("subject matter jurisdiction cannot be waived by any party and can be raised at any stage in the proceedings" (internal quotation marks omitted)); Practice Book § 10-33 ("[a]ny claim of lack of jurisdiction over the subject matter cannot be waived"). We, therefore, conclude that the qualified immunity defense to a § 1983 action does not implicate the subject matter jurisdiction of the court.[11] To hold

[11] To the extent that the precedent of this court may be read to suggest otherwise; see, e.g., *Jan G.* v. *Semple*, 202 Conn. App. 202, 218, 244 A.3d 644, cert. denied, 336 Conn. 937, 249 A.3d 38, cert. denied, U.S.     , 142 S. Ct. 205, 211 L. Ed. 2d 88 (2021); *Braham* v. *Newbould*, 160 Conn. App. 294, 301–307, 124 A.3d 977 (2015); *Traylor* v. *Gerratana*, 148 Conn. App. 605, 612, 88 A.3d 552, cert. denied, 312 Conn. 901, 91 A.3d 908, and cert. denied, 312 Conn. 902, 112 A.3d 778, cert. denied, 574 U.S. 978, 135 S. Ct. 444, 190 L. Ed. 2d 336 (2014); *Tuchman* v. *State,* 89 Conn. App. 745, 750 and 762–63 n.7, 878 A.2d 384, cert. denied, 275 Conn. 920, 883 A.2d 1252 (2005); we are bound by decisions of the United States Supreme Court because qualified immunity in the context of § 1983 claims is a matter of federal law. See *Schnabel* v. *Tyler*, supra, 230 Conn. 743 (Connecticut state courts "are bound by federal precedent" on qualified immunity claims under § 1983); *Mullin* v. *Guidant Corp.*, 114 Conn. App. 279, 288, 970 A.2d 733 (United States Supreme Court precedent is binding on this court on matters of federal law), cert. denied, 292 Conn. 921, 974 A.2d 722 (2009). As previously indicated in this opinion, the United States Supreme Court in *Gomez* v. *Toledo*, supra, 446 U.S. 640, held that qualified immunity is an affirmative defense to § 1983 claims that must be pleaded by a defendant. Affirmative defenses, unlike subject matter jurisdiction, may be waived under federal law. See *Maye* v. *New Haven*, supra, 89

otherwise would "expand . . . the contours of the immunity available to government officials" under federal law; *Schnabel* v. *Tyler*, supra, 230 Conn. 743; which this state court is not permitted to do. Id.; see also *Mulligan* v. *Rioux*, supra, 229 Conn. 756 (*Berdon, J.*, concurring in part) ("[W]ith regard to qualified immunity [in the context of § 1983 claims] we are not free to chart our own course. Rather, [Connecticut courts] must be guided by federal precedent, and can neither expand nor contract the scope of this defense."); cf. *Maye* v. *New Haven*, supra, 89 F.4th 408 (declining to expand collateral order doctrine because "it would essentially grant defendants the right to assert a qualified immunity defense at any time . . . as though the affirmative defense were the equivalent of a challenge to subject matter jurisdiction").

For that reason, the motion to dismiss is not the proper procedural vehicle to raise the qualified immunity defense in our courts in response to § 1983 claims. In this state, a motion to dismiss "properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." (Internal quotation marks omitted.) *Spillane* v. *Lamont*, supra, 350 Conn. 125; accord *Glens Falls Ins. Co.* v. *Somers*, 146 Conn. 708, 712, 156 A.2d 146 (1959) ("[a] motion to dismiss is not a proper vehicle for an attack on the sufficiency of a pleading"); *Caltabiano* v. *Phillips,* 23 Conn. App. 258, 265, 580 A.2d 67 (1990) ("[a] motion to dismiss does not test the sufficiency of a cause of action and should not be granted on other than jurisdictional grounds"). Special defenses, therefore, are not properly raised in motions to dismiss. See, e.g., *Grant* v. *Bassman*, 221 Conn. 465, 472–73, 604 A.2d 814 (1992) (claim that injured plaintiff made exclusive election of workers' compensation "is properly

F.4th 407; *Bogle* v. *McClure*, supra, 332 F.3d 1355 n.5. Accordingly, the court's holding in *Gomez* can only be read to mean that the qualified immunity defense to a § 1983 action is not jurisdictional in nature, as numerous federal courts have held.

raised by a special defense" and motion to dismiss was not "the proper procedural vehicle" to plead that "challenge to the plaintiffs' complaint"); *Zizka* v. *Water Pollution Control Authority*, supra, 195 Conn. 687 (special defense "may not be raised by a motion to dismiss"); *Gianetti* v. *Connecticut Newspapers Publishing Co.*, 136 Conn. App. 67, 75, 44 A.3d 191 ("[statute of limitations] defenses are appropriately raised as special defenses . . . and not in motions to dismiss"), cert. denied, 307 Conn. 923, 55 A.3d 567 (2012); *Sullivan* v. *Thorndike*, 104 Conn. App. 297, 309–10, 934 A.2d 827 (2007) (concluding that trial court "improperly based its granting of the defendant's motion to dismiss on the defendant's special defenses"), cert. denied, 285 Conn. 907, 942 A.2d 415 (2008), and cert. denied, 285 Conn. 908, 942 A.2d 416 (2008); *John H. Kolb & Sons, Inc.* v. *G & L Excavating, Inc.*, 76 Conn. App. 599, 606, 821 A.2d 774 (motion to dismiss improperly granted "when based on a special defense"), cert. denied, 264 Conn. 919, 828 A.2d 617 (2003). Because the qualified immunity defense to a § 1983 action is a special defense, it cannot properly be raised in a motion to dismiss in Connecticut's state courts.

Rather, the qualified immunity defense to § 1983 actions, like other special defenses, properly is raised in either a motion to strike, in which a party challenges the legal sufficiency of a pleading; see Practice Book § 10-39; or a motion for summary judgment, in which a party contends that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.[12] See Practice Book § 17-49. A motion to strike under our rules of practice is the functional equivalent of a motion to dismiss in federal court pursuant to rule 12 (b) (6) of

---

[12] When the issue has arisen in the context of state law, this court similarly has held that the qualified immunity conferred on attorneys appointed to represent minor children pursuant to General Statutes § 46b-54 "is properly pleaded as a special defense and [is properly] raised by using either a motion to strike or a motion for summary judgment." *Carrubba* v. *Moskowitz*, 81 Conn. App. 382, 385, 840 A.2d 557 (2004), aff'd, 274 Conn. 533, 877 A.2d 773 (2005).

the Federal Rules of Civil Procedure,[13] and, when properly asserted, "attacks the sufficiency of the pleadings." *Egri* v. *Foisie*, 83 Conn. App. 243, 247, 848 A.2d 1266, cert. denied, 271 Conn. 931, 859 A.2d 930 (2004). As this court has noted, "[t]he distinction between the motion to dismiss and the motion to strike is not merely semantic. If a motion to dismiss is granted, the case is terminated, save for an appeal from that ruling. . . . The granting of a motion to strike, however, ordinarily is not a final judgment because our rules of practice afford a party a right to amend deficient pleadings." (Citation omitted.) Id., 249. That "critical distinction"; id.; provides further support for our conclusion that the qualified immunity defense is not properly raised in a motion to dismiss under our rules of practice.

The qualified immunity defense to § 1983 actions also may be raised by way of a motion for summary judgment. As several courts have observed, summary judgment often is a preferred method for raising that defense. See, e.g., *Mouille* v. *Live Oak*, 977 F.2d 924, 926 (5th Cir. 1992) ("[q]ualified immunity is normally raised prior to trial at the summary judgment stage"), cert. denied sub nom. *Liberda* v. *Live Oak*, 508 U.S. 951, 113 S. Ct. 2443, 124 L. Ed. 2d 660 (1993); *Cartier* v. *Lussier*, 955 F.2d 841, 844 (2d Cir. 1992) ("The [United States] Supreme Court has expressly encouraged the use of summary judgment when qualified immunity is

---

[13] See, e.g., *Culverhouse* v. *Paulson & Co.*, 813 F.3d 991, 993–94 (11th Cir. 2016) (explaining that District Court "incorrectly described [the plaintiff's deficient pleading] as jurisdictional" and "should have dismissed [the] complaint for failure to state a claim [pursuant to] Fed. R. Civ. P. 12 (b) (6), not for lack of subject-matter jurisdiction [pursuant to] Fed. R. Civ. P. 12 (b) (1)"); *Norex Petroleum Ltd.* v. *Access Industries, Inc.*, 631 F.3d 29, 32 (2d Cir. 2010) (challenge to legal sufficiency of pleading "is properly analyzed as a merits question pursuant to Fed. R. Civ. P. 12 (b) (6), not as a question of subject matter jurisdiction raised by Fed. R. Civ. P. 12 (b) (1)"), cert. dismissed, 564 U.S. 1053, 133 S. Ct. 21, 180 L. Ed. 2d 913 (2011); cf. *Carter* v. *Ludwick*, 139 F.4th 982, 989 (8th Cir. 2025) ("[q]ualified immunity is an affirmative defense [that] will be upheld on a [Fed. R. Civ. P.] 12 (b) (6) motion only when the immunity is established on the face of the complaint" (internal quotation marks omitted)).

raised as a defense.  The objective reasonableness test was designed to facilitate this summary device as a means quickly to extricate government officials from defending insubstantial suits."); *Mulligan* v. *Rioux*, supra, 229 Conn. 736 n.23 ("[b]ecause the defense of qualified immunity has been construed as an immunity from suit, not a mere defense to liability . . . when there are no unresolved factual issues material to its applicability, it is preferable for the trial court to decide the issue of qualified immunity as a matter of law on a pretrial motion for summary judgment" (citation omitted)).  In this regard, we note that parties in this state may move for summary judgment at any time.  See Practice Book § 17-44 ("any party may move for a summary judgment as to any cause of action or defense as a matter of right at any time if no scheduling order exists and the case has not been assigned for trial"); see also *Joe's Pizza, Inc.* v. *Aetna Life & Casualty Co.*, 236 Conn. 863, 867 n.8, 675 A.2d 441 (1996) ("a party may move for summary judgment at any time"); *Nash* v. *Roland Dumont Agency, Inc.*, Docket No. CV-18-5018054-S, 2018 WL 6721442, *1 (Conn. Super. November 21, 2018) ("[p]rior to filing an answer, the defendants filed a motion for summary judgment, as permitted by Practice Book § 17-44").

It is well established that "once the issue of subject matter jurisdiction is raised, it must be immediately acted upon by the court."  (Internal quotation marks omitted.)  *Wolfork* v. *Yale Medical Group*, 335 Conn. 448, 464 n.9, 239 A.3d 272 (2020).  That is not the case here, as the qualified immunity defense to a § 1983 action does not implicate the subject matter jurisdiction of the court.  In addition, we note that the trial court in the present case did not rule on the defendants' contention that the plaintiff's claims were barred by the qualified immunity defense.  We also are mindful of the critical distinction between motions to dismiss and motions to strike under our rules of practice.  See *Egri* v. *Foisie*, supra, 83 Conn. App. 249.  Were this court to affirm the dismissal of the plaintiff's claims against the defendants in their individual capacities on the qualified immunity

defense—despite the fact that the qualified immunity defense to § 1983 actions is not jurisdictional in nature—the plaintiff would be denied his "right to amend the deficient pleading."[14] *Baskin's Appeal from Probate*, 194 Conn. 635, 640, 484 A.2d 934 (1984); see also Practice Book § 10-44. For all of those reasons, we decline to address the merits of the defendants' alternate ground of affirmance with respect to the doctrine of qualified immunity. The defendants are free to renew that challenge on remand before the trial court.

In light of the foregoing, we conclude that the court improperly dismissed the plaintiff's action against the defendants in their individual capacities for lack of personal jurisdiction.

The judgment is reversed in part and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.

---

[14] We recognize that, on occasion, our courts have treated a procedurally incorrect motion to dismiss as a motion to strike when it is uncontroverted that the plaintiff could not add anything to its complaint by way of amendment to avoid the deficiencies of the original complaint. See, e.g., *Fort Trumbull Conservancy, LLC* v. *Alves*, 262 Conn. 480, 501–502, 815 A.2d 1188 (2003); *McCutcheon & Burr, Inc.* v. *Berman*, 218 Conn. 512, 527–28, 590 A.2d 438 (1991). We decline to do so here, as the trial court neither heard argument on the legal sufficiency of the plaintiff's complaint nor ruled on that issue. Moreover, the defendants have not argued that the right to amend a deficient pleading memorialized in Practice Book § 10-44 would be unavailing to the plaintiff in this case.